EXHIBIT 1

SCOULER & COMPANY
NEW YORK • LOS ANGELES • ATLANTA • CLEVELAND

March 30, 2011

Board of Hawaii Medical Center
2230 Liliha Street,
Honolulu, HI 96817
Attention: Ken Silva

Dear Mr. Silva:

This letter, together with the attached Schedules and General Terms and Conditions (collectively, the "Agreement"), confirms and sets forth the terms and conditions of the engagement of Scouler & Company, LLC ("we," "us," "our" "Scouler" or "Consultant") to act as Chief Restructuring Officer for Hawaii Medical Center [and certain of its subsidiaries] ("you," "your" or the "Company"). Upon execution of this letter by each of the parties below and receipt of the advance payment retainer (as set forth in Schedule I) by Scouler, this letter will constitute a binding agreement between the Company and Scouler.

**SERVICES TO BE PROVIDED**

**Appointment of CRO**

1. Upon approval of the Company's Board of Directors (the "Board"), Scouler will provide the services of Dan Scouler to serve as Chief Restructuring Officer ("CRO"). The CRO will report directly to the Board.

2. Upon mutual consent of Scouler and the Board, Scouler will provide such additional personnel (the "Additional Personnel") as may be necessary to assist in the performance of the duties set forth below. Such Additional Personnel shall be designated by the Company as executive officers.

**Tasks and Duties**

As directed by the Board, the CRO and any Additional Personnel shall provide the Company with, without limitation, the following services:

1. Assist Maria Kostylo and her team through the bankruptcy process by, among other things, serving as the primary contact for the other advisors, the secured lenders, unsecured creditors and other parties in interest. Provide non-legal restructuring and bankruptcy advice to the HMC board.

NEW YORK • 445 PARK AVENUE, 10TH FLOOR • NEW YORK, NY 10022 • P. 212.362.1140 • F. 917.322.2105
LOS ANGELES • 1800 CENTURY PARK EAST, SUITE 600 • LOS ANGELES, CA 90067 • P. 310.229.5900 • F. 310.229.5799
ATLANTA • 400 COLONY SQUARE, SUITE 200 • 1201 PEACHTREE STREET NE • ATLANTA, GA 30361 • P. 404.881.2888 • F. 770.486.5727
CLEVELAND • 600 SUPERIOR AVENUE EAST, SUITE 1300 • CLEVELAND, OH 44114 • P. 216.522.1901 • F. 216.479.6801
WWW.SCOULER.COM

2. Supervise the preparation of all necessary bankruptcy filings, including the schedules and statements of financial affairs, the monthly reports, and the cash projections for the cash collateral and/or DIP budgets.

3. Represent the Debtor in all court proceedings to provide testimony on any contested matters and plan feasibility issues, as requested.

4. Work with the Company's management to perform a financial review of the Company, including, but not limited to a review and assessment of financial information, including, without limitation, the Company's projected short and long-term cash flows.

5. Provide ongoing, periodic assessments of operations and financial performance, including progress towards achieving the Company's strategic objectives.

6. Conduct ongoing, routine communications with the Company's lenders and other creditors including periodic reviews of the Company's performance and progress towards achieving its strategic objectives.

7. Provide such other similar services as may be necessary to maximize enterprise value.

8. The CRO and any Additional Personnel shall provide such other services as requested or directed by the Board and agreed to by such officer.

We will perform our services in a manner that will permit the business operations of the Company to proceed in an orderly manner, subject to the requirements of this engagement. Our personnel will require on-site access to review books, records, reports and other data located at the offices of the Company and to discuss matters with its management and other personnel. In addition, you agree to provide reasonable access to (a) your computer systems (including reasonable computer services support) and (b) your other professional advisors, including your independent accountants and outside counsel.

The Company agrees that in addition to and without in any way limiting its general indemnification obligations set forth in the Schedules hereto, Scouler, the CRO, and any Additional Personnel working on this matter shall be covered as officers under the Company's existing director and officer liability insurance policy, which coverage shall be maintained for a period of not less than two years following the date of the termination of such officer's services hereunder.

This Agreement, together with the attached Schedules and the General Terms and Conditions, is intended to (i) supersede any prior agreement between the parties and (ii) serve as the entire agreement between the parties with respect to the subject matter hereof, regardless of any billing guidelines or any other policies that the Company may maintain.

We look forward to working with you on this matter. Please sign and return a copy of this Agreement signifying your agreement with the terms and provisions set forth herein and in the attached Schedules and

SCOULER & COMPANY
NEW YORK • LOS ANGELES • ATLANTA • CLEVELAND

General Terms and Conditions. If you have any questions, please call Dan Scouler at (310) 207-2244

Sincerely,

SCOULER & COMPANY, LLC

Daniel Scouler

Daniel Scouler
Chief Executive Officer

AGREED TO:

Maria Koffo, CEO
Agreed by:

By: Ken Silva
Name: Ken Silva
Title: Board Member, Hawaii Medical Center

Enclosures:
- Schedule I Professional Fees and Payment
- Schedule II Disbursements
- Schedule III Other Terms and Conditions
- Schedule IV Indemnification

WWW.SCOULER.COM

## SCHEDULE I

### PROFESSIONAL FEES AND PAYMENT

**Hourly Rates**

Our statements for professional services will be substantially based upon the amount of time spent by our professionals who perform services on your behalf and their respective hourly rates as then in effect. Those hourly rates take into account the timekeepers' experience and expertise in particular areas and are adjusted periodically.

Dan Scouler will be your principal contact with respect to this engagement and his current hourly rate is $695/hour. Additionally, the following Scouler professionals will be assisting in this matter:

| Name | Hourly Rate |
|---|---|
| Bob Noyes | $ 400 |
| Kern Gillette | $ 450 |
| Bret Jacobs | $ 400 |
| Lars Parkin | $ 250 |

If a Scouler professional is traveling on account of this engagement, but not otherwise working on this matter, such time will be billed at one-half the normal hourly rate.

Additional personnel may assist with this matter as may be appropriate under the circumstances. If you have any questions or concerns about the staffing of this matter, please contact Dan Scouler.

**Advance Payment**

You have agreed to provide Scouler with an advance payment retainer in connection with this representation. We have agreed to an initial advance payment retainer of $15,000. Upon our receipt of this initial advance payment retainer, we will begin work. Ownership of this retainer passes to Scouler immediately upon payment and will be deposited into Scouler's general account. You hereby agree that you have had the opportunity to discuss this provision with counsel. *See In re Shihai*, 392 B.R. 62, 71 (Bankr. S.D.N.Y. 2008) (discussing advance payment retainers).

From time to time, Scouler may require additional advance payment retainers in an amount that Scouler believes to be reasonable in its sole discretion.

To the extent that the final fees and expenses of Scouler for this representation do not exceed the amount of advance payment retainer then held, Scouler will refund the remaining amounts of the advance payment retainer.

**Billing Arrangements**

Scouler will render statements for professional services and related charges on a weekly basis. To the extent that a retainer is not applied as to any outstanding statement, we will expect payment to be made upon your receipt of our statement, without regard to the consummation or outcome of the matter for which we have been engaged. In the event our statements are not timely paid, we reserve the right to suspend our services until satisfactory payment arrangements are made or to terminate services if such arrangements are not made and if termination is otherwise appropriate.

In the event of a bankruptcy filing, billing will be on a monthly basis and billing and payment arrangements will be consistent with the Bankruptcy Court's orders.

To the extent that Scouler is providing services to multiple legal entities in this matter, liability for Scouler's invoices shall be joint and several amongst those entities.

Scouler shall transmit its statements via electronic mail and you agree to receipt of statements via electronic mail.

If you have any questions about any statement for professional services and related charges that we submit to you, you should contact Dan Scouler as soon as you receive it so that we may understand and address your concerns properly.

**Administrative or Judicial Testimony**

It is understood that if Scouler employees are required to testify at any administrative or judicial proceeding relating to this matter (whether during the term of the Agreement or after termination), Scouler will be compensated by the Company at the regular hourly rates for each such employee, in effect at the time, and reimbursed for reasonable out of pocket expenses (including, without limitation, counsel fees).

**SCHEDULE II**

**DISBURSEMENTS**

Unlike many other firms, Scouler ***does not*** charge clients for the following internal expenses:

- first class U.S. postage;
- secretarial services;
- long distance telephone calls;
- conference call dial-in services;
- internal photocopying;
- facsimile transmissions; and
- internal document scanning.

With respect to disbursements incurred on your behalf to vendors and other third parties for incidental expenses (such as travel expenses), you will be billed at our invoiced costs. Scouler endeavors to (i) minimize such out of pocket expenses and (ii) incur only reasonable out of pocket expenses in light of the nature and scope of the engagement. Such out of pocket costs may include, without limitation, the following:

- airline travel (which shall be coach fare, unless coach fare is not available within the scheduling parameters required by the client);
- car rental;
- hotel;
- business meals; and
- messengers and overnight couriers.

Additionally, it is Scouler's policy to charge 75% (up to $185/month per professional) of its professionals' cell phone bill for the period during which the professional is traveling on account of a particular client matter to that client.



SCOULER & COMPANY
NEW YORK • LOS ANGELES • ATLANTA • CLEVELAND

**SCHEDULE III**

**OTHER TERMS AND CONDITIONS**

**TERMINATION**

Either party may terminate the Agreement for any reason at any time, with or without cause. Your termination of our services will not affect your responsibility to pay for billed and unbilled services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor professionals of your choice.

**COMMUNICATIONS WITH CLIENTS**

To enable us to provide effective services, you agree to be truthful and to cooperate with us in the course of the engagement and to keep us reasonably informed of material developments.

If there are particular limitations on how you would like us to communicate with you, please advise us in advance about your preferences; we will, of course, abide by your wishes in this regard. Unless you advise us to the contrary, however, we will assume that communication by e-mail and fax is acceptable to you. Absent special arrangements, we do not employ encryption technologies in our electronic communications.

**SEVERANCE OF TERMS**

If all or any part of our Agreement is or becomes illegal, invalid or unenforceable in any respect, then the remainder will remain valid and enforceable.

**THIRD PARTY RIGHTS**

No provision of our Agreement is intended to be enforceable by any third party. Accordingly, no third party shall have any right to enforce or rely on any provision of our Agreement.

**ASSIGNMENT**

We may assign the benefit of our Agreement to any partnership or corporate entity which carries on the business of Scouler & Company in succession to us. You will accept the performance by such assignee of the Agreement in substitution for our performance.

Subject to the foregoing paragraph, neither you nor we shall have the right to assign or transfer the benefit or burden of our Agreement without the written consent of the other party.

**RESOLVING PROBLEMS AND DISPUTES**

If you have any complaints or concerns about our work for you, please raise these with the professional responsible for your engagement. We will investigate your complaint promptly and carefully and do what we reasonably can to resolve the difficulties to your satisfaction.

**LIMITATIONS ON ENGAGEMENT**

Because of the time and scope limitations implicit in our engagement, the depth of our analyses and verification of the data is significantly limited. We understand that we are not being requested to perform an audit nor to apply generally accepted auditing standards or procedures. We further understand that we are entitled, except in the event that it is unreasonable to do so, to rely on the accuracy and validity of the data disclosed to us or supplied to us by your officers, directors, employees and agents (and those of the debtor in the case of lender or creditors' committee engagements). We will not, nor are we under any obligation to, update data submitted to us, or extend our activities beyond the scope set forth in the Agreement, unless we agree to do so upon your specific request. Further, due to the factors referenced in this paragraph, any periodic oral and/or written reports provided by us will not provide assurances concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. Our work will be performed on a "level-of-efforts" basis; that is, the circumstances of our engagement may cause our advice to be limited in certain respects based upon, among other matters, the limited extent of available data and the lack of opportunity for supporting investigations.

**CONFIDENTIALITY**

You agree to treat any information received from us, whether orally or in writing, with the utmost confidentiality and, except as provided in this letter, will not publish, distribute or disclose in any manner any information developed by or received from us without our prior written approval (except to your officers, directors, employees, attorneys, advisors or lenders, to whom you may disclose such information on a 'need to know' basis without our prior written approval). Such approval shall not be unreasonably withheld. Our approval is not needed if (a) the information sought is required to be disclosed by an order binding on the Company or us, issued by a court having competent jurisdiction over the Company or us, as applicable (unless such order specifies that the information to be disclosed is to be placed under seal) or (b) such information is otherwise publicly available. We agree that all confidential non-public information that you provide us or that we receive from your accountants or outside counsel in connection with this engagement will be treated confidentially by us, except as required by law or as authorized.

**NON-SOLICITATION OF CONSULTANTS**

You agree to promptly notify us if you extend (or solicit the possible interest in receiving) an offer of employment to a principal or employee of Scouler and agree that you will pay Scouler a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or

target bonus, to be paid to Scouler's former principal or employee that you hire at any time up to one year subsequent to the date of the final invoice rendered by Scouler with respect to this engagement.

**CONFLICTS OF INTEREST**

We have in the past and may in the future provide services to various parties who may be adverse to you on unrelated matters. We have discussed these relationships with you and you hereby expressly agree that you do not believe that this creates for us a conflict of interest in relation to this engagement.

**INDEPENDENT CONTRACTOR STATUS**

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, Scouler will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. None of Scouler's employees, including, as applicable, any employee(s) serving as Chief Restructuring Officers, will be entitled to receive from Scouler's clients any vacation pay, sick leave, retirement, pension or social security benefits, workers compensation, disability, unemployment insurance benefits or any other employee benefits. Scouler will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

**DISCLOSURE OF ENGAGEMENT**

Notwithstanding anything to the contrary contained herein, Scouler shall have the right to disclose its retention or the successful completion of its services in marketing or promotional materials placed by Scouler, at its own expense, in financial and other newspapers or otherwise. Scouler shall provide you with any marketing or promotional materials placed by Scouler pursuant to this letter agreement and engagement and you must approve the content of such materials prior to their distribution, which approval shall not be unreasonably withheld.

**GOVERNING LAW**

This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Hawaii.

**JURISDICTION; SERVICE OF PROCESS**

**ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS INITIATED BY YOU, OR SCOULER IN CONNECTION HEREWITH OR THEREWITH SHALL BE BROUGHT AND MAINTAINED IN THE STATE AND FEDERAL COURTS LOCATED IN HAWAII. YOU IRREVOCABLY CONSENT TO THE SERVICE OF PROCESS BY REGISTERED MAIL,**

POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE OF HAWAII AT THE ADDRESS SPECIFIED IN THE ENGAGEMENT LETTER. YOU ALSO HEREBY EXPRESSLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH YOU MAY HAVE OR HEREAFTER MAY HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. TO THE EXTENT THAT YOU MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO YOURSELF OR YOUR PROPERTY, YOU HEREBY IRREVOCABLY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THE AGREEMENT.

WAIVER OF JURY TRIAL

YOU HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT.

## SCHEDULE IV

### INDEMNIFICATION AGREEMENT

This indemnity is an integral part of that certain engagement letter dated March 29, 2011 (which together with these Schedules, and as the same may be renewed, modified or amended from time to time, is referred to herein as the "Agreement") by and between Scouler & Company, LLC ("Scouler") and Hawaii Medical Center (the "Company"), for services to be rendered to the Company by Scouler.

### A. SCOPE OF INDEMNIFICATION

The Company agrees to and shall indemnify and hold harmless each of Scouler, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of Scouler, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of Scouler, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

These indemnification provisions shall not in any way limit and shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or Scouler's and its personnel's role under the Agreement, Scouler or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or Scouler or any of its personnel (including former employees) or

any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

## B. NOTIFICATION OF EXISTENCE OF CLAIMS

Indemnified Parties will notify the Company reasonably promptly upon actually becoming aware of the existence or commencement of an action, proceeding or investigation with respect to which the Indemnified Party proposes to demand indemnification hereunder; *provided*, *however*, that any failure by an Indemnified Party to provide reasonably prompt notice to the Company will not relieve the Company of its obligations hereunder, except to the extent that such failure shall have actually and materially prejudiced the defense of such action.

## C. PAYMENT OR REIMBURSEMENT OF EXPENSES

Expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, will be promptly paid and/or reimbursed by the Company upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. The Company hereby accepts its undertaking, and each Indemnified Party hereby undertakes, and to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefore. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

**D. UNENFORCEABILITY OF INDEMNIFICATION**

To provide for just and equitable contribution if the express provisions hereof provide for indemnification but a claim is made hereunder but a court of competent jurisdiction enters a final non-appealable judgment finding that the indemnification is unenforceable, then the relative fault of the Company, on the one hand, and the Indemnified Party or Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

**E. JUDICIAL APPROVAL OF RETENTION**

If the Company and Scouler seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which Scouler would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, application, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such assumption, retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim. Neither termination of the Agreement nor termination of Scouler's engagement nor the filing of a petition under chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

**F. EFFECT OF TERMINATION OR BANKRUPTCY**

Neither termination of the Agreement nor termination of Scouler's engagement nor the filing of a petition under chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

**G. NON-EXCLUSIVITY**

SCOULER & COMPANY
NEW YORK • LOS ANGELES • ATLANTA • CLEVELAND

The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

WWW.SCOULER.COM