MCDONALD HOPKINS LLC

SHAWN M. RILEY (0037235)
PAUL W. LINEHAN (0070116)
JOHN A. POLINKO (0073967)
600 Superior Avenue, East, Suite 2100
Cleveland, OH  44114-2653
Telephone:  (216) 348-5400
Facsimile:  (216) 348-5474
Email:   **sriley@mcdonaldhopkins.com**
         **plinehan@mcdonaldhopkins.com**
         **jpolinko@mcdonaldhopkins.com**

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A HAWAII LIMITED LIABILITY LAW COMPANY

CHRISTOPHER J. MUZZI (6939)
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, HI  96813
Telephone:  (808) 531-0490, Facsimile (808) 534-0202
Email:  **cmuzzi@hilaw.us**

Proposed Co-Counsel to the Debtors and
Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>Hawaii Medical Center, et al.,[1]<br><br>    Debtors. | Case No. 11-01746<br>(Chapter 11 Case)<br>(Honorable Robert J. Faris)<br>(Joint Administration Requested) |
| This document relates to:<br>All Cases | |

---

[1] The Debtors are as follows:  Hawaii Medical Center, a Hawaii non-profit corporation (Tax No. 20-3409838); Hawaii Medical Center East, a Hawaii non-profit corporation (Tax No. 51-0598670); and Hawaii Medical Center West, a Hawaii non-profit corporation (Tax No. 51-0598672).

This document relates to:
All Cases

## DEBTORS' PLAN OF REORGANIZATION

Dated: June 21, 2011

2

Hawaii Medical Center ("**HMC**"), Hawaii Medical Center West ("**HMCW**"), and Hawaii Medical Center East ("**HMCE**" and together with HMC and HMCW, the "**Debtors**") hereby propose the following Plan of Reorganization (the "**Plan**") pursuant to chapter 11 of the Bankruptcy Code:

## INTRODUCTION

The Plan defines the Debtors' financial structure from and after the Effective Date, including the ownership interests in the Reorganized Debtors. Among other things, the Plan designates classes of Claims and classes of Interests, identifies each Class of Claim or Interest as Unimpaired or Impaired, provides for the satisfaction of all Claims against and Interests in the Debtors, and provides adequate means for the implementation of the Plan.

A separate document, entitled the "Disclosure Statement in Support of Plan of Reorganization" (the "**Disclosure Statement**"), accompanies the Plan. The Disclosure Statement is intended to provide you with information sufficient to enable you to determine whether to vote for or against the Plan. The Disclosure Statement includes a summary of the Debtors' assets and liabilities, a summary of what Holders of Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for

3

Confirmation of the Plan. Along with the Plan and the Disclosure Statement, Holders of Claims and Interests entitled to vote on the Plan will receive a Ballot for voting on the Plan.

The Debtors strongly recommend that you review thoroughly both the Plan and Disclosure Statement before deciding whether you will accept or reject the Plan.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

1.1    <u>Definitions</u>. As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.1.1    "**Administrative Expense Claim**" means any claim alleged to have priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of a Debtor, any actual and necessary expenses of operating the business of the Debtors, all compensation and reimbursement of expenses allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 4 of 105

1.1.2    "**Affiliate**" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code, and when used with reference to any Debtor, shall include, but not be limited to, each of the other Debtors.

1.1.3    "**Allowed Claim/Allowed Interest**" means any Claim against or Interest in the Debtors, (a) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against or proofs of Interest in the Debtors, (b) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent, or (c) any Interest registered in the stock register maintained by or on behalf of the Debtors as of the Confirmation Date and, in each such case in clauses (a), (b) and (c) above, a Claim or Interest as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" or "Allowed Interest" shall not, for

purposes of computation of distributions under the Plan, include interest on such Claim or Interest from and after the Commencement Date.

      1.1.4    "**Allowed Administrative Expense Claim**" means an Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

      1.1.5    "**Allowed Other Priority Claim**" means an Other Priority Claim, to the extent it is or has become an Allowed Claim.

      1.1.6    "**Allowed Other Secured Claim**" means an Other Secured Claim, to the extent it is or has become an Allowed Claim.

      1.1.7    "**Allowed Priority Tax Claim**" means a Priority Tax Claim, to the extent it is or has become an Allowed Claim.

      1.1.8    "**Allowed Secured Claim**" means a Secured Claim, to the extent it is or has become an Allowed Claim.

      1.1.9    "**Allowed Unsecured Claim**" means an Unsecured Claim, to the extent it is or has become an Allowed Claim.

      1.1.10    "**Amended St. Francis Leases**" means the St. Francis Leases as amended and restated substantially in the form included in the Plan Supplement.

1.1.11   **"Articles of Incorporation"** means the Articles of Incorporation of the Reorganized Debtors in substantially the form included in the Plan Supplement.

1.1.12   **"Ballot"** means the form or forms distributed to each holder of an impaired Claim or Interest entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

1.1.13   **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended.

1.1.14   **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Hawaii.

1.1.15   **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.1.16   **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been Filed.

1.1.17   **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.1.18 "**By-Laws**" means the By-Laws of the Reorganized Debtors in substantially the form included in the Plan Supplement.

1.1.19 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.1.20 "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

1.1.21 "**Claims Objection Bar Date**" means, for all Claims and all Interests, other than those Claims and Interests expressly not specifically allowed in the Plan, the later of: (a) 90 days after the Effective Date; (b) 60 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such Claim.

1.1.22 "**Class**" means a class of Claims or Interests, as described in Article II.

1.1.23 "**Collective Bargaining Agreements**" means collectively (a) the collective bargaining agreement on wages, hours and working conditions between HMCE and ILWU Local 142; (b) collective bargaining agreement between HMCE and Hawaii Nurses' Association; (c) collective bargaining agreement between HMCE and Hawaii Association of

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed 06/21/11  Page 8 of 105

Security Officers Local Union 1; (d) collective bargaining agreement between HMCE and Hawaii Teamsters and Allied Workers Local 996, IBT; (e) collective bargaining agreement between HMCW and Laborers' International Union of North America Local 368 (Non-Technical Unit); (f) collective bargaining agreement between HMCW and Laborers' International Union of North America Local 368 (Technical Unit); and (g) collective bargaining agreement between HMCW and Hawaii Nurses' Association.

      1.1.24    "**Committee**" means any official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Reorganization Cases for the Debtors.

      1.1.25    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

      1.1.26    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket within the meaning of Bankruptcy Rules 5003 and 9021.

      1.1.27    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 9 of 105

1.1.28 "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.29 "**Cure Amount Claim**" means a Claim based upon the Debtors' defaults under an Executory Contract and Unexpired Lease at the time such contract or lease is assumed by the Debtors under section 365 of the Bankruptcy Code, including any actual pecuniary loss resulting from such default, but shall not include defaults arising from a provision relating to (i) the insolvency or financial condition of the Debtors at any time before the closing of the Reorganization Cases, (ii) the commencement of the Reorganization Cases, or (iii) the satisfaction of any penalty rate or provision relating to a default arising from any failure by the Debtors to perform nonmonetary obligations under the Executory Contract or Unexpired Lease.

1.1.30 "**Date of Assessment**" means in the case of a federal Priority Tax Claim the later of (a) first Business Day following the ninetieth day after a notice of deficiency in respect of such Allowed Priority Tax Claim is issued and (b) if a case is commenced in the United States Tax Court, the date any judgment of the United States Tax Court determining the amount of any Claim for taxes against the Debtors becomes final and,

10

in the case of any other Priority Tax Claim, sixty days after the date any such Claim becomes an Allowed Claim.

1.1.31   "**Debtor(s)**" means, individually or collectively, HMC, HMCE, and HMCW as chapter 11 debtors in the Reorganization Cases.

1.1.32   "**Deficiency Amount**" means the amount, if any, by which the Allowed amount of a Secured Claim exceeds the value of the collateral securing such Claim or the amount by which a Claim subject to setoff exceeds the Allowed amount of any setoff.

1.1.33   "**Deficiency Claim**" means any Claim against the Debtors representing a Deficiency Amount.

1.1.34   "**Derivative Claim**" means a claim that is property of the Debtors' Estates pursuant to section 541 of the Bankruptcy Code.

1.1.35   "**DIP Facility**" means the postpetition financing facility provided by the DIP Lender pursuant to the postpetition amendment to the MidCap Credit Agreement as authorized by the Financing Order.

1.1.36   "**DIP Facility Obligations**" means all obligations of the Debtors arising under the DIP Facility, including all loans, advances, debts, letters of credit, liabilities, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether

11

arising by reason of an extension of credit, loan, foreign exchange risk, guaranty, indemnification, or in any other manner.

1.1.37 "**DIP Lender**" means MidCap in its capacity as lender under the DIP Facility.

1.1.38 "**Disbursing Agent**" means (a) a Person designated by one or more Reorganized Debtors to act as a Disbursing Agent and/or (b) the Reorganized Debtors, as applicable, pursuant to Section 7.1.

1.1.39 "**Disclosure Statement**" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

1.1.40 "**Disputed Claim**" means: (a) a Claim that is listed on the Debtors' Schedules as other than disputed, contingent or unliquidated, but as to which a Reorganized Debtors or, prior to the Confirmation Date, any other party in interest, has Filed an objection on or before the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; (b) a Claim that is listed on the Debtors' Schedules as disputed, contingent or unliquidated; or (c) if a proof of Claim or request for payment of an Administrative Expense Claim has been Filed by the Bar

Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim for which no corresponding Claim is listed on the Debtors' Schedules; (ii) a Claim for which a corresponding Claim is listed on the Debtors' Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iii) a Claim for which a corresponding Claim is listed on the Debtors' Schedules as disputed, contingent or unliquidated; (iv) a Claim for which an objection has been Filed by a Reorganized Debtor or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; or (v) a Tort Claim.

   1.1.41 "**Disputed Insured Claim**" and "**Disputed Uninsured Claim**" mean, respectively, an Insured Claim or an Uninsured Claim that is also a Disputed Claim.

   1.1.42 "**Distribution Record Date**" means the close of business on the Confirmation Date.

   1.1.43 "**Effective Date**" means a day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after

all conditions to the Effective Date in Section 10.2 have been met or waived pursuant to Section 10.3.

      1.1.44   "**Estate(s)**" means the estates created for HMC, HMCE, and HMCW in their Reorganization Cases pursuant to section 541 of the Bankruptcy Code.

      1.1.45   "**Executory Contract and Unexpired Lease**" means a contract or lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

      1.1.46   "**Exit Facility**" means the $15,000,000 revolving credit facility to be entered into by the Reorganized Debtors and the Exit Lender as of the Effective Date on the terms and conditions set forth in Plan Exhibit 5.7.

      1.1.47   "**Exit Facility Credit Agreement**" means that certain credit agreement to be executed by and among the Reorganized Debtors, as borrowers, and the Exit Lender, substantially in the form included in the Plan Supplement.

      1.1.48   "**Exit Lender**" means MidCap in its capacity as lender under the Exit Facility Credit Agreement.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 14 of 105

1.1.49    "**File**," "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Reorganization Cases.

1.1.50    "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court, as entered on the docket in any Reorganization Cases or the docket of such other court, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

1.1.51    "**Financing Order**" means (a) that certain Agreed Interim Order (I) Authorizing Post-Petition Secured Financing Pursuant To Sections 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), 364(E) And 503(B) Of The Bankruptcy Code; (II) Authorizing The Debtors To Use Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code;

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 15 of 105

(III) Providing Adequate Protection To The Prepetition Secured Parties Pursuant To Sections 361, 362, And 363 Of The Bankruptcy Code; (IV) Modifying The Automatic Stay Pursuant To Section 362(D) Of The Bankruptcy Code; (V) Authorizing Execution Of Postpetition Amendment To Prepetition Revolving Credit Agreement; (VI) Providing Related Relief; And (VII) Scheduling A Final Hearing, and (b) the Agreed Final Order (I) Authorizing Post-Petition Secured Financing Pursuant To Sections 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), 364(E) And 503(B) Of The Bankruptcy Code; (II) Authorizing The Debtors To Use Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code; (III) Providing Adequate Protection To The Prepetition Secured Parties Pursuant To Sections 361, 362, And 363 Of The Bankruptcy Code; (IV) Modifying The Automatic Stay Pursuant To Section 362(D) Of The Bankruptcy Code; (V) Authorizing Execution Of Postpetition Amendment To Prepetition Revolving Credit Agreement; and (VI) Providing Related Relief, as may be amended or modified with the consent of the DIP Lender.

  1.1.52 "**HMC**" means Hawaii Medical Center, a Hawaii nonprofit corporation that owns 100% of the stock in HMCE and HMCW and a debtor in possession in the Reorganization Cases.

1.1.53    "**HMCE**" means Hawaii Medical Center East, a Hawaii nonprofit corporation and a debtor in possession in the Reorganization Cases.

1.1.54    "**HMCW**" means Hawaii Medical Center West, a Hawaii nonprofit corporation and a debtor in possession in the Reorganization Cases.

1.1.55    "**Holder**" means the beneficial owners of any Claim, Interest or Administrative Expense, which, in the case of an investment company, shall be the investment company and not their shareholders, and which in the case of an insurance company, shall be the insurance company and not their insured.

1.1.56    "**Impaired**" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.1.57    "**Insured Claim**" means any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy, other than a workers' compensation insurance policy, applicable to the Debtors or their businesses.

1.1.58    "**Intercompany Claim**" means all prepetition Claims against any of the Debtors held by another Debtor or a non-Debtor Affiliate.

17

1.1.59 "**Interest**" means the interest of any holder of an equity security of the Debtors represented by any issued and outstanding membership interest in or other instrument evidencing a present ownership interest in a Debtor, whether or not transferable, or any option, warrant or right, contractual or otherwise, to purchase, sell, or subscribe to such interest in the Debtors.

1.1.60 "**Liens**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, constructive trust claim, equitable lien or other encumbrance of any kind, or any conditional sale contract, title retention contract or other contract to give any of the foregoing.

1.1.61 "**MidCap**" means MidCap Financial, LLC.

1.1.62 "**MidCap Credit Agreement**" means that certain Credit Agreement, dated as of August 17, 2010, as the same may have been or may hereafter be modified, amended, restated, supplemented, renewed or replaced from time to time, by and among the Debtors, as borrowers, and MidCap.

1.1.63 "**MidCap Credit Documents**" means, collectively, the MidCap Credit Agreement and all other agreements, instruments, notes,

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 18 of 105

guarantees and other documents executed in connection therewith, including, without limitation, all collateral and security documents.

1.1.64    "**MidCap Early Termination Claim**" means any right to a fee that MidCap may have, if any, under section 2.03(c) of the MidCap Credit Agreement.

1.1.65    "**MidCap Secured Claim**" means the aggregate amount of the MidCap Secured Obligations owing by the Debtors under the MidCap Credit Agreement and the other MidCap Credit Documents, including (i) all principal obligations owing under the MidCap Credit Agreement, (ii) all accrued and unpaid interest owing under the MidCap Credit Agreement at the non-default rate, (iii) all accrued and unpaid fees and expenses that are chargeable or reimbursable under the MidCap Credit Documents, and (iv) all other fees, charges and expenses that are chargeable or reimbursable under the MidCap Credit Documents, in each case to the maximum extent allowable under section 506(b) of the Bankruptcy Code, including the MidCap Early Termination Claim.  For purposes of clarity, the MidCap Secured Claim shall not include amounts owing under the DIP Facility.

1.1.66    "**MidCap Secured Obligations**" means, with respect to the Revolving Credit Facility A (as such term is defined in the MidCap

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 19 of 105

Credit Agreement), all obligations of the Debtors arising under the MidCap Credit Documents, including all loans, advances, debts, letters of credit, liabilities, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether arising by reason of an extension of credit, loan, foreign exchange risk, guaranty, indemnification, or in any other manner. For purposes of clarity, the MidCap Secured Obligations shall not include DIP Facility Obligations.

      1.1.67   "**Ordinary Course Administrative Expenses**" means Allowed Administrative Expenses that represent obligations incurred by the Debtors in the ordinary course of their business during the Reorganization Cases.

      1.1.68   "**Other Priority Claim**" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

      1.1.69   "**Plan**" means this plan of reorganization for the Debtors, and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

      1.1.70   "**Plan Supplement**" means a supplemental appendix to the Plan that will contain the draft form of certain documents to be

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 20 of 105

executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date, including, but not limited to (i) Articles of Incorporation; (ii) Bylaws; (iii) the Amended St. Francis Leases; (iv) the Exit Facility Credit Agreement; and (v) any documents required for the merger of the Debtors into the Reorganized Debtors, to be filed no later than 10 days before the date of the Confirmation Hearing.

1.1.71 "**Person**" means an individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

1.1.72 "**Petition Date**" means June 21, 2011.

1.1.73 "**Priority Tax Claim**" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.1.74 "**Professional**" means any professional employed in the Reorganization Cases pursuant to sections 327 or 1103 of the Bankruptcy Code or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Reorganization Cases under or pursuant to section 503(b)(4) of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 21 of 105

1.1.75 "**Professional Fee Claim**" means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Reorganization Cases.

1.1.76 "**Real Property Executory Contract and Unexpired Lease**" means, collectively, an Executory Contract or Unexpired Lease relating to the Debtors' interest in real property and any Executory Contracts and Unexpired Leases granting rights or interests related to or appurtenant to the applicable real property, including all easements; licenses; permits; rights; privileges; immunities; options; rights of first refusal; powers; uses; usufructs; reciprocal easement or operating agreements; vault, tunnel or bridge agreements or franchises; development rights; and any other interests in real estate or rights in rem related to the applicable real property.

1.1.77 "**Recovery Action(s)**" means, collectively and individually: (a) preference actions, fraudulent conveyance actions, rights of setoff and other claims or causes of action under sections 510, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code and other applicable bankruptcy or nonbankruptcy law; (b) claims or causes of action to recover illegal dividends or stock redemptions and similar claims; (c) claims or

22

causes of action based on piercing the corporate veil, alter ego liability or similar legal or equitable theories of recovery arising out of the ownership or operation of the Debtors; and (d) claims or causes of action of the Debtors based on unjust enrichment against an officer of director, for fraud, breach of fiduciary duty, mismanagement, malfeasance or relating to the provision of retiree medical benefits or director and officer liability insurance or indemnification.

1.1.78 "**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default whether or not such default occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or

such applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest.

1.1.79 "**Reorganization Cases**" means the bankruptcy cases pending for the Debtors in the Bankruptcy Court, under Case Nos. 11-01746, 11-01747, and 11-01748.

1.1.80 "**Reorganized Debtors**" means collectively, Reorganized Medical Center, Reorganized East, and Reorganized West after the Effective Date.

1.1.81 "**Reorganized Medical Center**" means SFHH after giving effect to the merger with HMC in Section 5.2.

1.1.82 "**Reorganized East**" means SFH-Liliha after giving effect to the merger with HMCE in Section 5.2.

1.1.83 "**Reorganized West**" means SFH-Ewa after giving effect to the merger with HMCW in Section 5.2.

24

1.1.84 "**Restructuring Support Agreement**" means that certain Restructuring Support Agreement dated as of June 20, 2011 among the Debtors, St. Francis, and MidCap, in its capacity as the holder of the MidCap Secured Claim.

1.1.85 "**Rights of Action**" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether commenced before or after the Effective Date, including Derivative Claims and Recovery Actions.

1.1.86 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as the same may have been or may be amended, modified or supplemented.

1.1.87 "**Secured Claim**" means a Claim that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 25 of 105

the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

      1.1.88   "**Secured Tax Claim**" means a Priority Tax Claim that is also a Secured Claim.

      1.1.89   "**SFHS**" means St. Francis Healthcare System Of Hawaii.

      1.1.90   "**SFMC**" means St. Francis Medical Center.

      1.1.91   "**St. Francis**" means collectively, SFHS, SFMC, and St. Francis Medical Center – West.

      1.1.92   "**St. Francis Credit Documents**" means that certain Term Note A Loan Agreement, dated as of August 17, 2010, by and among the Debtors and St. Francis, as the same may have been or may hereafter be modified, amended, restated, supplemented, renewed or replaced from time to time, and all other agreements, instruments, notes, interest pledges, guaranties and other documents executed in connection therewith, including, without limitation, the collateral and security documents executed by the Debtors in favor of St. Francis.

      1.1.93   "**St. Francis Designees**" means SFHS or SFMC.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 26 of 105

1.1.94 "**St. Francis Leases**" means all non-residential real property leases under which St. Francis or any of its affiliates is a lessor to any of the Debtors.

1.1.95 "**St. Francis Secured Claim**" means the aggregate amount of the St. Francis Secured Obligations owing by the Debtors under the St. Francis Credit Agreement and the other St. Francis Credit Documents, including (i) all principal obligations owing under the St. Francis Credit Agreement, (ii) all accrued and unpaid interest owing under the St. Francis Credit Agreement, (iii) all accrued and unpaid fees and expenses that are chargeable or reimbursable under the St. Francis Credit Documents, and (iv) all other fees, charges and expenses that are chargeable or reimbursable under the St. Francis Credit Documents, in each case to the maximum extent allowable under section 506(b) of the Bankruptcy Code

1.1.96 "**St. Francis Secured Obligations**" means all obligations owed by the Debtors under the St. Francis Credit Documents, including, without limitation, all loans, advances, debts, liabilities, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether arising by reason of an

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 27 of 105

extension of credit, loan, foreign exchange risk, guaranty, indemnification, or in any other manner.

1.1.97 "**Stipulation of Amount and Nature of Claim**" means a stipulation or other agreement between, on the one hand, the Debtors or the Reorganized Debtors and, on the other hand, a holder of a Claim or Interest, or an agreed order of the Bankruptcy Court, establishing the Allowed amount, priority, and/or secured status of a Claim or Interest.

1.1.98 "**Tax**" means (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Person.

1.1.99 "**Tort Claim**" means any Claim that has not been settled, compromised or otherwise resolved that (a) arises out of

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed 06/21/11  Page 28 of 105

allegations of personal injury, wrongful death, property damage, products liability, medical malpractice, or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment.

      1.1.100 "**Transferred Real Properties**" means all of the Debtors' fee interest in real property, wherever located, including without limitation the Debtors' fee interest in the buildings located at 2230 Liliha Street, Honolulu Hawaii 96817 and 91-2141 Ft. Weaver Road, Ewa Beach Hawaii 96706..

      1.1.101 "**Unclaimed Property**" shall have the meaning ascribed to such term in Section 7.6 herein.

      1.1.102 "**Unimpaired**" means with respect to a Claim that such Claim is not Impaired including, without limitation, as a result of being Reinstated under this Plan.

      1.1.103 "**Uninsured Claim**" means any Claim that is not an Insured Claim.

      1.1.104 "**Unsecured Claim**" means any Claim that is not an Administrative Expense Claim, Cure Amount Claim, Other Priority Claim, Priority Tax Claim, or Secured Claim.

U.S. Bankruptcy Court - Hawaii #11-01746 Dkt # 19 Filed 06/21/11 Page 29 of 105

1.1.105  "**Voting Deadline**" means the date and time set by the Bankruptcy Court as the deadline for submitting Ballots to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

1.2     Interpretation; Application of Definitions and Rules of Construction.  Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  Any capitalized term used herein and not defined herein but defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

ARTICLE II
TREATMENT OF ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1     Administrative Expense Claims.  Except as provided in Section 2.2 below or to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment, the applicable Reorganized Debtor shall pay to each holder of an Allowed

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 30 of 105

Administrative Expense Claim Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that all Ordinary Course Administrative Expenses shall be paid in full by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and conditions of agreements relating thereto. The Confirmation Order shall contain a bar date for purposes of assertion and allowance of Administrative Expense Claims, other than Ordinary Course Administrative Expenses.

2.2     Compensation and Reimbursement Claims. Except as provided in Section 2.3, all Professionals that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in the Reorganization Cases in accordance with section 330 or 331 of the Bankruptcy Code or entitled to the priority pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court (a) on or as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date on which the Bankruptcy Court order allowing such Claim becomes a Final Order, or (b) upon such other terms

31

as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and a Reorganized Debtor.

2.3   Bar Dates for Administrative Expense Claims.

2.3.1   General Bar Date Provisions.  Except as otherwise provided herein, unless previously Filed, requests for payment of Administrative Expense Claims must be Filed and served on the pertinent Reorganized Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 30 days after the Effective Date (the "**Administrative Claims Bar Date**").  Holders of Administrative Expense Claims that are required to File and serve a request for payment of such Administrative Expense Claims and that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors or the Reorganized Debtors or their respective property, and such Administrative Expense Claims will be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the Reorganized Debtors and the requesting party within 60 days after the Filing of the applicable request for payment of Administrative Expense Claims.

2.3.2     <u>Bar Dates for Certain Administrative Expense Claims</u>.

Professionals asserting a Professional Fee Claim for services rendered to the Estates before the Effective Date must File and serve on the Reorganized Debtors and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, the Professional Fee Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim, as it relates to services provided to the Estates, no later than 60 days after the Effective Date.  Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting Professional by the later of (1) 90 days after the Effective Date or (2) 30 days after the Filing of the applicable request for payment of the Professional Fee Claim.  To the extent necessary, the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court, including the Professional Fee Order, regarding the payment of Professional Fee Claims.

2.4     <u>DIP Facility Obligations</u>.  On the Effective Date, the DIP Facility Obligations shall be repaid in full with proceeds of the Exit Facility in full satisfaction, settlement, release, and discharge of and in exchange for all of the Debtors' obligations under the DIP Facility.

33

2.5    <u>Payment of Priority Tax Claims</u>.  The Allowed Priority Tax Claim held by the Internal Revenue Service and any state taxing authority relating to any taxable year shall be the lesser of: (a) the Allowed Claim held by such Person; (b) the estimated claim amount held by such Person, if estimated by the Bankruptcy Court for purposes of allowance; or (c) the amount of such claim as determined by any administrative or judicial tribunal of competent jurisdiction before which such issue is brought by final order or as compromised and settled by the pertinent Reorganized Debtor and such taxing authority.  Notwithstanding any other provision of this Plan to the contrary, payments in respect of Allowed Priority Tax Claims shall not be made on the Effective Date, but rather shall, at the sole option <u>and</u> discretion of the pertinent Reorganized Debtors be made (a) in full, in Cash, on the later of the Effective Date or the Date of Assessment, (b) in accordance with section 1129(a)(9)(c) of the Bankruptcy Code, in full, in Cash, in up to twenty (20) equal quarterly installments, commencing on the first Business Day following the Date of Assessment of such Allowed Priority Tax Claim, together with interest from the Date of Assessment at a rate to be determined by the Bankruptcy Court, or (c) by mutual agreement of the Holder of such Allowed Priority Tax Claim and pertinent Reorganized Debtors.

34

2.6    Other Provisions Concerning Treatment of Priority Tax Claims.

Notwithstanding the provisions of Section 2.2, the holder of an Allowed

Priority Tax Claim will not be entitled to receive any payment on account of

any penalty arising with respect to or in connection with the Allowed Priority

Tax Claim.  Any such Claim or demand for any such penalty will be subject

to treatment in Classes 1E through 3E as applicable.  The holder of an

Allowed Priority Tax Claim will not assess or attempt to collect such penalty

from the pertinent Debtor, pertinent Reorganized Debtor or any of their

respective property.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1    This Plan constitutes a separate chapter 11 plan of

reorganization for each Debtor.  For purposes of brevity and convenience,

the classification and treatment of Claims and Interests has been set forth

as follows:  (i) HMC (Debtor 1); (ii) HMCE (Debtor 2); and (iii) HMCW

(Debtor 3).

3.2    Claims and Interests, other than Administrative Expense Claims

and Priority Tax Claims are classified for all purposes, including, where

applicable, voting, confirmation, and distribution pursuant to the Plan, as

follows:

Class A – MidCap Secured Claim

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 35 of 105

Class B – St. Francis Secured Claim

Class C – Other Secured Claims

Class D – Other Priority Claims

Class E – General Unsecured Claims

Class F – Intercompany Claims

Class G – Interests

ARTICLE IV
TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1    CLASSES 1A through 3A – MIDCAP SECURED CLAIM.

Classes 1A through 3A consist of the MidCap Secured Claim.

4.1.1    Allowance.  The MidCap Secured Claim shall be

Allowed in the principal amount of $7,676,495.82, plus all applicable

interest, fees (including, without limitation, the MidCap Early Termination

Claim) and costs of MidCap pursuant to the MidCap Credit Documents (the

"**Allowed MidCap Secured Claim**").

4.1.2    Treatment.  On the Effective Date, together with other

distributions provided for in this Plan, in full satisfaction, settlement, release

and discharge of and in exchange for the Allowed MidCap Secured Claim,

the Reorganized Debtors shall pay MidCap an amount of Cash, with the

proceeds from the Exit Facility, equal to (i) the Allowed MidCap Secured

Claim, less (ii) the sum of (a) all amounts received by MidCap and applied

36

to permanently reduce the MidCap Secured Claim on or before the Effective Date and (b) the MidCap Early Termination Claim.

4.1.3    Voting.  Classes 1A through 3A are Impaired. Because Classes 1A through 3A are Impaired and Holders of Claims in Classes 1A through 3A receive consideration under the Plan, the Holders of Claims in Classes 1A through 3A are permitted to vote to accept or reject the Plan.

4.2    CLASSES 1B through 3B – ST. FRANCIS SECURED CLAIM. Classes 1B through 3B consist of the St. Francis Secured Claim.

4.2.1    Allowance.  The St. Francis Secured Claim shall be Allowed as a Secured Claim in the principal amount of $39,175,277.61, plus all applicable interest, fees and costs of St. Francis pursuant to the St. Francis Credit Documents (the "**Allowed St. Francis Secured Claim**").

4.2.2    Treatment.  On the Effective Date, together with other distributions provided for in this Plan, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed St. Francis Secured Claim, (a) the St. Francis Designees shall receive fee title to the Transferred Real Properties; and (b) each of HMC, HMCE, and HMCW will merge with and into the Reorganized Debtors as set forth in Section 5.2.

37

4.2.3   <u>Voting</u>.  Classes 1B through 3B are Impaired.

Because Classes 1B through 3B are Impaired and Holders of Claims in Classes 1B through 3B receive consideration under the Plan, the Holders of Claims in Classes 1B through 3B are permitted to vote to accept or reject the Plan.

4.3   <u>CLASSES 1C through 3C – OTHER SECURED CLAIMS</u>.

Classes 1C through 3C consist of all Other Secured Claims.

4.3.1   <u>Treatment</u>.  On the Effective Date, at the election of the pertinent Reorganized Debtor, the Holder of each Allowed Other Secured Claim shall, on account of such Claim, either:  (i) be paid in Cash in full, (ii) have surrendered to it, without representation or warranty, the collateral securing its Claim, (iii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (A) be paid a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of this title, (B) have Reinstated the maturity of such Claim as such maturity existed before such default, (C) be compensated for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, and (D) otherwise not have altered the

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 38 of 105

legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim, or (iv) have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim. In the case of option (ii) or (iii), in the event that any such Claim is not completely satisfied by such distribution, the Deficiency Amount will constitute a Deficiency Claim against the Debtors and will be classified in the appropriate other Class and will receive the same treatment as other Claims in such Class. Any Holder of an Other Secured Claim may agree to accept less favorable treatment.

4.3.2    <u>Voting</u>. Classes 1C through 3C are Unimpaired. The Holders of Claims in Classes 1C through 3C will not vote to accept or reject the Plan.

4.4    <u>CLASSES 1D through 3D – OTHER PRIORITY CLAIMS</u>. Classes 1D through 3D consist of all Other Priority Claims.

4.4.1    <u>Treatment</u>. On (a) the later of (i) the Effective Date (or as soon as practicable thereafter), (ii) the date such Other Priority Claim becomes an allowed Other Priority Claim, and (iii) such other date as may be agreed upon by the Reorganized Debtors and the holder of such Other Priority Claim, or (b) on such other date as the Bankruptcy Court may order, each holder of an allowed Other Priority Claim against the Debtors

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 39 of 105

shall receive on account of and in full and complete settlement, release and discharge of such Other Priority Claim, at the Reorganized Debtors' election, (i) cash in the amount of such allowed Other Priority Claim in accordance with section 1129(a)(9) of the Bankruptcy Code and/or (ii) such Other Priority Claim shall be Reinstated.  All Allowed Other Priority Claims against the Debtors that are not due and payable on or before the Effective Date shall be paid by the Reorganized Debtors as and when such claims become due and payable in the ordinary course of business in accordance with their terms.

4.4.2    Voting.  Classes 1D through 3D are Unimpaired.  The Holders of Claims in Classes 1D through 3D will not vote to accept or reject the Plan.

4.5    CLASSES 1E through 3E – UNSECURED CLAIMS.

Classes 1E through 3E consist of all Unsecured Claims.

4.5.1    Treatment of Unsecured Claims.  Holders of Unsecured Claims shall not receive any distribution under the Plan.

4.5.2    Voting.  Classes 1E through 3E are Impaired. Because Classes 1E through 3E are Impaired and Holders of Claims in Classes 1E through 3E do not receive consideration under the Plan, the

40

Holders of Claims in Classes 1E through 3E are deemed to reject the Plan and are not permitted to vote.

4.6     CLASSES 1F through 3F – INTERCOMPANY CLAIMS. Classes 1F through 3F consist of all Intercompany Claims.

    4.6.1     Treatment.  Holders of Intercompany Claims shall not receive any distribution under the Plan.

    4.6.2     Voting.  Classes 1F through 3F are Impaired.  The Holders of Claims in Classes 1F through 3F shall not receive any property under the Plan, Classes 1F through 3F are deemed to reject the Plan.

4.7     CLASSES 2G and 3G – INTERESTS.  Classes 2G and 3G consist of all Interests in the Debtors.

    4.7.1     Treatment.  All Interests in the Debtors will be canceled on the Effective Date.  Holders of Interests in Classes 2G and 3G shall not receive or retain any Interests or property under the Plan.

    4.7.2     Voting.  Classes 2G and 3G are Impaired.  Because holders of Interests in Classes 2G and 3G shall not receive any property under the Plan, Classes 2G and 3G are deemed to reject the Plan.

ARTICLE V
MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Non-Substantive Consolidation.  Although the Plan is presented as a plan of reorganization respecting three Debtors, this Plan does not

provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Allowed Claims held against one Debtor will be satisfied solely from the Cash and assets of such Debtor and its Estate, provided that, to the extent of any insufficiency, funds may be advanced to the relevant Debtors by the Estate of HMC or any of the Debtors at the option of the advancing Debtor, as applicable. Except as specifically set forth herein, nothing in this Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that any one or all of the Debtors is subject to or liable for any Claims against any other Debtor. A Claim against multiple Debtors will be treated as a separate Claim against each Debtor's Estate for all purposes including, but not limited to, voting and distribution; provided, however, that no Claim will receive value in excess of 100% of the Allowed amount of such Claim. Notwithstanding anything to the contrary in this Plan, the Reinstated Claims and Impaired Claims receiving distributions under this Plan of a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of this Plan, the Reorganization Cases, or otherwise.

5.2 <u>Transfer of Assets and Mergers</u>. Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Estates of the Debtors, including all Rights of Action, and any property acquired by the Debtors under or in connection with the Plan shall be assigned to and will vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests. On or prior to the Effective Date, or as soon as possible thereafter, (a) HMC will merge with St. Francis Hospitals Hawaii, a Hawaii nonprofit corporation ("**SFHH**"), with SFHH being the surviving entity; (b) HMCE will merge with St. Francis Hospital-Liliha, a Hawaii nonprofit corporation ("**SFH-Liliha**"), with SFH-Liliha being the surviving entity; and (c) HMCW will merge with St. Francis Hospital-Ewa, a Hawaii nonprofit corporation ("**SFH-Ewa**,") with SFH-Ewa being the surviving entity. After giving effect to the foregoing mergers, HMC, HMCE, and HMCW shall cease their corporate existence. On and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire and dispose of property and compromise or settle any Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

43

5.3　Articles of Incorporation & By-Laws.　The Articles of Incorporation will, among other things, prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code.　After the Effective Date, the Reorganized Debtors may amend and restate their Articles of Incorporation, By-Laws and other constituent documents as permitted by applicable non-bankruptcy law.

5.4　Management/Board of Directors.　From and after the Effective Date, the persons named in Exhibit 5.4, which shall be filed with the Plan Supplement, shall serve as the Reorganized Debtors' board of directors subject to the terms and conditions of the Articles of Incorporation, the By-Laws and applicable law.　Exhibit 5.4 shall also disclose the officers of the Reorganized Debtors.　St. Francis shall have the right to identify the directors and officers included in Exhibit 5.4.

5.5　Corporate Actions.　On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the following:　(a) the adoption and the filing with the Director of the Department of Commerce and Consumer Affairs of the Articles of Incorporation; (b) the adoption of the By-Laws; (c) the execution and delivery of the Amended St. Francis Leases; (d) the cancellation of the

44

Interests; (e) the execution and delivery of the Exit Facility; and (f) the execution and the delivery of, and the performance under, all documents and agreements contemplated by or relating to any of the foregoing. All matters provided for under the Plan involving the corporate structure of the Reorganized Debtors and any corporate action required by the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the shareholders or the directors of the Reorganized Debtors. On the Effective Date, the appropriate officers of each of the Reorganized Debtors are authorized and directed to execute and to deliver all agreements, documents and instruments contemplated by the Plan in the name and on behalf of the pertinent Reorganized Debtors.

5.6    <u>Sources of Cash for Plan Distributions</u>. The sources of Cash for distribution under the Plan will include, *inter alia*, the Debtors' Cash, proceeds of the Exit Facility, and future revenues of the Reorganized Debtors that may be retained by the Reorganized Debtors or transferred to the Disbursing Agent as necessary for distribution pursuant to the terms and conditions of the Plan.

5.7    <u>Exit Facility</u>. The Reorganized Debtors shall be authorized to enter into the Exit Facility, grant any liens and security interests and incur

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 45 of 105

or guarantee the indebtedness as required under the Exit Facility, and issue, execute and deliver all documents, instruments and agreements necessary to implement and effectuate borrowings under the Exit Facility.

5.8     St. Francis Contribution.  On the Effective Date, St. Francis shall contribute an amount of Cash between $2,000,000 and $5,200,000 as an equity contribution to the Reorganized Debtors (the "**St. Francis Contribution**").  The Reorganized Debtors shall use some or all of the St. Francis Contribution as security for the Exit Facility and for working capital purposes.

5.9     Cancellation of Existing Instruments.  On the Effective Date, all promissory notes, indentures, credit agreements, loan agreements, share certificates, options, warrants, and other instruments evidencing any MidCap Secured Obligations, the St. Francis Secured Obligations, any Unsecured Claims, and Interests shall be deemed cancelled and null and void without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors and Reorganized Debtors governing the MidCap Secured Obligations, St. Francis Secured Obligations, any Unsecured Claims, and Interests shall be discharged; *provided, however,* cancellation and discharge of the MidCap Secured Obligations is contingent upon (i) the Reorganized Debtors and

the Exit Lender entering into the Exit Facility Credit Agreement, and (ii) payment, in full, of the MidCap Secured Obligations, other than the MidCap Early Termination Claim.

ARTICLE VI
TREATMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES

6.1 <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, all executory contracts or unexpired leases to which any of the Debtors is a party shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such executory contracts or unexpired leases (i) shall have been previously assumed by the Debtors by Final Order of the Bankruptcy Court, (ii) shall be the subject of a motion to assume pending on or before the Effective Date, (iii) are listed on Plan Exhibit 6.1, which shall be the schedule of executory contracts or unexpired leases assumed pursuant to this Plan, or (iv) are otherwise assumed pursuant to the terms of this Plan.  Plan Exhibit 6.1 shall be Filed no later than five Business Days prior to the Confirmation Date.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections and assumptions contemplated hereby pursuant to sections 365(a) and 1123 of the Bankruptcy Code as of the

47

Effective Date.  Each executory contract and unexpired lease assumed pursuant to this Article VI shall revest in, be assigned to, and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.  Neither the exclusion nor the inclusion by the Debtors of a contract or lease on Plan Exhibit 6.1 nor anything contained in this Plan shall constitute an admission by the Debtors that such lease or contract is an unexpired lease or executory contract that any Debtor or Non-Debtor Affiliate has any liability thereunder.  The Debtors reserve the right, subject to notice, to amend, modify, supplement, or otherwise change Plan Exhibit 6.1 on or before the Effective Date, provided, however, that Plan Exhibit 6.1 may only be amended with the prior written consent of St. Francis.

6.2     Collective Bargaining Agreements.  Upon the Effective Date, any Collective Bargaining Agreement entered into by the Debtors that has not expired by its terms and is in effect as of the Effective Date shall be deemed to have been assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  Entry of the Confirmation Order shall constitute the Bankruptcy

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 48 of 105

Court's approval of the survival, and/or the pertinent Debtor's assumption of the Collective Bargaining Agreements then in effect, except to the extent that such agreements have already been assumed prior to the entry of the Confirmation Order, and shall be a determination that there are no defaults existing as of the Effective Date or, if there are any defaults, the amount necessary to cure such defaults under sections 365 and 1123 shall be zero ($0). Upon the Effective Date, with respect to any Collective Bargaining Agreement entered into by the Debtors that has expired by its terms, the rights and obligations, if any, of the Reorganized Debtors with respect to such expired agreement shall not be affected by the Confirmation Order, and the Reorganized Debtors shall continue to have the same rights and obligations with respect to any such expired agreement as the Debtors had immediately prior to the entry of the Confirmation Order and any such rights and obligations of the Reorganized Debtors under any such expired agreement shall continue to be determined in accordance with applicable federal labor law.

6.3 <u>Post-Petition Contracts and Leases</u>. All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by such Debtors to the Reorganized Debtors on the Effective Date.

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 49 of 105

6.4    St. Francis Leases.  The St. Francis Leases shall be assumed in substantially the form of the Amended St. Francis Leases, which shall include, among other things, the modifications set forth on Plan Exhibit 6.4.

6.5    Assumption of Medicare and Medicaid Provider Agreement(s). The Reorganized Debtors shall expressly assume all of the Debtors' Medicare provider agreement(s) and numbers with the Centers for Medicare and Medicaid Services ("**CMS**").  Such assumption shall be "with assignment" (as such term is used in 42 C.F.R. § 489.18(d)).  The Debtors shall expressly assume all of the Debtors' Medicaid provider agreement(s) and numbers, which assumption shall be "with assignment" to the Reorganized Debtors.

6.6    Cure of Defaults in Connection with Assumption.  The proposed cure amount for any executory contract or unexpired lease that is assumed pursuant to this Plan shall be zero ($0) dollars unless otherwise indicated in a schedule to be filed with the Bankruptcy Court as part of the Plan Supplement or other pleading filed by the Debtors.  Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default and not subsequently cured shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the pertinent Reorganized Debtor:  (a) by payment of the default amount in Cash within

60 days of the Effective Date or (b) on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the executory contract or unexpired lease at issue shall be deemed conditionally assumed by the relevant Debtor unless otherwise ordered by the Bankruptcy Court.

6.7 <u>Bar Date for Rejection Damages</u>. If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Reorganized Debtors, their successors or properties unless a proof of Claim is Filed and served on the pertinent Reorganized Debtor and its counsel within 30 days after the Effective Date. Notice of the Bar Date for

rejection damages shall be sent to all parties to such Executory Contracts and Unexpired Leases that were rejected. All such Claims for which proofs of Claim are required to be filed, if Allowed, will be, and will be treated as, Unsecured Claims (or Convenience Claims, if appropriate) subject to the provisions of the Plan.

6.8    Bar Date for Bankruptcy Code § 365(n) Election.  If the rejection of an executory contract pursuant to the Plan gives rise to the right by the other party or parties to such contract to make an election under § 365(n) of the Bankruptcy Code to either treat such contract as terminated or to retain its rights under such contract, such other party to such contract will be deemed to elect to treat such contract as terminated unless such other party files and serves a notice of its alternative election on the pertinent Reorganized Debtor and its counsel within 30 days after the Effective Date.

6.9    Licensing Requirements.  The Reorganized Debtors shall, as of the Effective Date, comply with all the proper state and federal regulatory requirements, including but not limited to, acquiring any certificates of need, licenses, permits, notices and approvals necessary to operate without restriction as healthcare facilities and to participate in Medicare, Medicaid, and any other government health benefit program in which the Debtors are

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 52 of 105

currently participants under federal and Hawaii law, each without interruption in payment.

## ARTICLE VII
## DISTRIBUTIONS AND RELATED MATTERS

7.1     <u>Reorganized Debtors to Serve As Disbursing Agent</u>.  The Reorganized Debtors shall serve as the Disbursing Agents to hold and distribute Cash and such other property as may be distributed pursuant to the Plan, provided however, that the Reorganized Debtors, in their sole and absolute discretion, may employ another Person, on such terms as may be determined by the Reorganized Debtors, to hold and distribute Cash and such other property as may be distributed pursuant to the Plan.  Even if the Disbursing Agent is a Person other than the Reorganized Debtors, the Disbursing Agent shall be an agent of the Reorganized Debtors and not a separate taxable Person with respect to, for example, the assets held, income received or disbursements or distributions made for the Reorganized Debtors.  The Reorganized Debtors shall not be required to post or otherwise provide a bond in connection with the making of any distributions pursuant to the Plan.

7.2     <u>Dates of Distributions</u>.  The Sections of the Plan on treatment of Administrative Expense Claims, Claims, and Interests specify the times for distributions.  Whenever any payment or distribution to be made under the

Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day. Distributions due on the Effective Date will be paid on such date or as soon as practicable thereafter, provided that if other provisions of the Plan require the surrender of securities or establish other conditions precedent to receiving a distribution, the distribution may be delayed until such surrender occurs or conditions are satisfied. If, under the terms of the Plan, the resolution of a particular Disputed Claim, (*e.g.*, it is Disallowed), entitles other Holders of Claims or Interests to a further distribution, either (a) the Reorganized Debtors or the Disbursing Agent may make such further distribution as soon practicable after the resolution of the Disputed Claim or (b) if the further distribution is determined in good faith, by the Reorganized Debtors or the Disbursing Agent who is to make such distribution, to be less than $500 for any Creditor, then, in order to afford the Reorganized Debtors an opportunity to minimize costs and aggregate such distributions, the Reorganized Debtors or the Disbursing Agent may make such further distribution any time prior to sixty (60) days after the Final Resolution Date.

7.3    Cash Distributions.  Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank,

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 54 of 105

at the option of the Reorganized Debtors, as applicable, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

7.4 <u>De Minimis Distributions</u>.  The Reorganized Debtors or Disbursing Agent shall not distribute Cash to the holder of an Allowed Claim in an Impaired Class if the total aggregate amount of Cash to be distributed on account of such Claim is less than $25, unless the Reorganized Debtors or the Disbursing Agent determines within its sole discretion to make such distribution.  Any holder of an Allowed Claim on account of which the total aggregate amount of Cash to be distributed is less than $25 will have its claim for such distribution discharged and will be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors or Disbursing Agent, or their respective property.

7.5 <u>Disputed Claims</u>.

7.5.1 Distributions of consideration due in respect of a Disputed Claim shall be held and not made pending resolution of the Disputed Claim.

7.5.2 After an objection to a Disputed Claim is withdrawn, resolved by agreement, or determined by Final Order, the distributions due

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 55 of 105

on account of any resulting Allowed Claim, Allowed Interest or Allowed Administrative Expense Claim shall be made by the Reorganized Debtors or the Disbursing Agent.  Such distribution shall be made at the time provided in the Plan for the next scheduled distribution to the class or type of Claim or Administrative Expense Claim of such Holder and, if there is no such further scheduled time, within forty-five (45) days of the date that the Disputed Claim becomes an Allowed Claim or Allowed Administrative Expense Claim.  No interest shall be due to a Holder of a Disputed Claim based on the delay attendant to determining the allowance of such Claim or Administrative Expense Claim.

   7.5.3  If a Claim is Disallowed (by example only, under 11 U.S.C. § 502(d)), such Holder's Claim shall be cancelled, retired and of no further force and effect and such Holder shall be obligated to surrender any document, certificate or other matter evidencing such Claim.  The Holders of any such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities or other documentation, or the cancellation thereof, except the rights provided pursuant to the Plan.

   7.6  <u>Undeliverable and Unclaimed Distributions</u>.  If any distribution under the Plan is returned to any Reorganized Debtors or its agents as

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 56 of 105

undeliverable or the check or other similar instrument or distribution by any Reorganized Debtor remains uncashed or unclaimed for one hundred eighty (180) days, such distribution shall be deemed to be "Unclaimed Property." Upon a distribution becoming Unclaimed Property, it immediately shall be revested in the pertinent Reorganized Debtor. Pending becoming Unclaimed Property, such distribution will remain in the possession of the Disbursing Agent and, if the Disbursing Agent is notified in writing of a new address for the Holder, it shall cause distribution of the Cash or New Notes, as appropriate, within 45 days thereafter. Once there becomes Unclaimed Property for a Holder, no subsequent distributions for such Holder which may otherwise be due under the Plan will accrue or be held for such Holder, provided that, if the pertinent Reorganized Debtor is notified in writing of such Holder's then-current address and status as a Holder under the Plan, thereafter, the Holder will become entitled to its share of distributions, if any, which first become due after such notification.

7.7    <u>Compliance with Tax Requirements</u>.  The Reorganized Debtors and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.  In connection with each distribution with respect to which the filing of an information

57

return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Reorganized Debtors and the Disbursing Agent shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Reorganized Debtors or the Disbursing Agent, the Reorganized Debtors or the Disbursing Agent may, at their sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received; provided, however, that the Reorganized Debtors or the Disbursing Agent shall not be obligated to liquidate any securities to perform such withholding.

7.8    Special Provision Regarding Unimpaired Claims. Except as otherwise explicitly provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

58

7.9    Setoffs.  The Reorganized Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim or Administrative Expense Claim (other than the MidCap Secured Claim) the payments or other distributions to be made pursuant to this Plan in respect of such Claim, Administrative Expense Claim, or claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim or Administrative Expense Claim; provided, however, that neither the failure to do so nor the allowance of any Claim or Administrative Expense Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder.

ARTICLE VIII
PROCEDURES FOR RESOLVING
DISPUTED CLAIMS; AND LITIGATION

8.1    Objections to Claims.  All objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Reorganization Cases.  If an objection is required to be Filed and has not been Filed to a proof of Claim or a scheduled Claim by the Claims Objection Bar Date, the

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 59 of 105

Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. An objection is deemed to have been timely Filed as to all Tort Claims, thus making each such Claim a Disputed Claim as of the Claims Objection Bar Date. Each such Tort Claim will remain a Disputed Claim until it becomes an Allowed Claim.

8.2 <u>Authority to Prosecute Objections</u>. After the Effective Date, only the Reorganized Debtors will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court.

8.3 <u>Estimation of Tax Claims</u>. In addition to any other available remedies or procedures with respect to Tax Claims or Tax issues or liabilities, the Reorganized Debtors or any of them, at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: any Tax issue or liability relating to an act or event occurring prior to the Effective Date; or any Tax liability arising prior to the Effective Date. If a Reorganized Debtor utilizes section 505(b) of the Bankruptcy Code: (1) the Court shall determine the amount of the subject Tax liability or Claim in the event that the appropriate governmental entity timely

determines a Tax to be due in excess of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of Tax liability or Claim in accordance with section 505(b) of the Bankruptcy Code, the Reorganized Debtors and any successors to the Debtors shall be entitled to such discharge, which shall apply to any and all Taxes relating to the period covered by such return.

8.4    <u>Temporary or Permanent Resolution of Disputed Claims</u>.  The Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim, including without limitation any Tax Claim, pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtors have previously objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Disputed Claim at any time during litigation concerning any objection to the Disputed Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Disputed Claim, that estimated amount would constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Disputed Claim, the

Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim. In addition, the Reorganized Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim, Interest or Administrative Expense Claim and the rights of the Holder of such Claim, Interest or Administrative Expense Claim would have been resolved or adjudicated if the Reorganization Cases had not been commenced. All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

8.5 <u>Rights of Action</u>. In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors, to the extent set forth below, and their successors, any assigns hereunder and future assigns will retain and may exclusively enforce any Rights of Action subject only to any <u>express</u> waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan, and the Confirmation Order's approval of the Plan shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Rights of Action. Absent such express waiver or release, the Reorganized Debtors, or its successors or assigns may pursue Rights of Action, as appropriate, in accordance with the best interests of

the Reorganized Debtors (or their successors or future assigns). The Rights of Actions may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date.

   8.5.1  Absent an express waiver or release as referenced above, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Reorganized Debtors from utilizing, pursuing, prosecuting or otherwise acting upon all or any of their Rights of Action and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Rights of Action upon or after Confirmation or Consummation. *By example only and without limiting the foregoing, the utilization or assertion of a Right of Action or the initiation of any proceeding with respect thereto against a Person, by the Reorganized Debtors or any successor to or assign of them, shall not be barred (whether by estoppel, collateral estoppel, res judicata or otherwise) as a result of: (a) the solicitation of a vote on the Plan from such Person or such Person's predecessor in interest; (b) the Claim, Interest or Administrative Expense Claim of such Person or such Person's predecessor in interest having been listed in the Debtors' Schedules, List of Holders of Interests, or in the Plan, Disclosure*

*Statement or any exhibit thereto; (c) prior objection to or allowance of a Claim, Interest or Administrative Expense Claim of the Person or such Person's predecessor in interest; or (d) Confirmation of the Plan.*

8.5.2    Notwithstanding any allowance of a Claim or Administrative Expense Claim, the Reorganized Debtors reserve the right to seek, among other things, to have such Claim or Administrative Expense Claim disallowed if the Reorganized Debtors, at the appropriate time, determine that one or more of them has a defense under 11 U.S.C. § 502(d), *e.g.*, a Reorganized Debtor holds a Right of Action for an Avoidance claim against the Holder of such Claim or Administrative Expense Claim and such Holder after demand refuses to pay the amount due in respect thereto.  Such reservation shall remain subject to any limitation on application of 11 U.S.C. § 502(d) to Administrative Expense Claim under applicable law.

ARTICLE IX
<u>EXEMPTION FROM CERTAIN TRANSFER TAXES</u>

9.1    Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or any other Person pursuant to the Plan including without limitation (a) the transfer of the Transferred Real Properties to the St. Francis Designees, and (b) the making of any agreement or instrument in furtherance of, or in connection

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 64 of 105

with, this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, reconveyance, or conveyance tax, mortgage recording tax or other similar Tax or governmental assessment.

9.2    The Confirmation Order shall provide, among other things (and the inclusion of such language, or language substantially similar to the following, shall be a condition to the Effective Date):

> "Each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the sale/assignment of the Debtors' assets pursuant to this Plan, including without limitation the transfer of the Transferred Real Properties to the St. Francis Designees, all without imposition and payment of any stamp tax, transfer tax, or similar tax, pursuant to Section 1146(a) of the Bankruptcy Code.  The register or recorder of deeds (or other similar recording agency) is hereby directed to accept and include a certified copy of this Order along with any other appropriate conveyance documents used to record and index the transfer of the Transferred Real Properties in the appropriate public records."

## ARTICLE X
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND CONSUMMATION OF THE PLAN

10.1  <u>Conditions to Confirmation</u>. The Bankruptcy Court will not enter the Confirmation Order unless and until the following conditions have been satisfied or duly waived pursuant to Section 10.3:

10.1.1    The Bankruptcy Court shall have entered an order, in a form reasonably acceptable to the Debtors, St. Francis, and MidCap approving the adequacy of the Disclosure Statement.

10.1.2    The Confirmation Order will be reasonably acceptable in form and substance to the Debtors, St. Francis, and MidCap.

10.1.3    The Confirmation Order shall include the language set forth in Section 9.2 of this Plan.

10.1.4    All Exhibits to the Plan and documents in the Plan Supplement are in form and substance reasonably satisfactory to the Debtors and St. Francis.

10.1.5    All Exhibits to the Plan and documents in the Plan Supplement affecting the treatment of the MidCap Secured Claims, including without limitation the DIP Facility, the Exit Facility and the structure of the Reorganized Debtors, shall be in a form and substance reasonably acceptable to the Debtors, St. Francis, and MidCap.

10.2    Conditions to the Effective Date.  The Effective Date will not occur, and the Plan will not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 10.3:

10.2.1 The Confirmation Order has been entered, has not been reversed, stayed, modified or amended and has become a Final Order.

10.2.2 The Confirmation Order shall authorize the Reorganized Debtors to take all actions necessary or appropriate to implement the Plan, including consummation of the transactions contemplated by the Plan, as well as the implementation and consummation of all contracts, instruments, releases and other agreement or documents generated in connection with the Plan.

10.2.3 No default or event of default shall have occurred under any Financing Order entered in the Reorganization Cases or the DIP Facility.

10.2.4 All government approvals, if any, necessary for the operation of the hospitals in accordance with the Plan shall have been obtained, including without limitation any approvals necessary for any changes to certificates of need or transfers of Medicare and Medicaid provider numbers.

10.2.5 The Bankruptcy Court shall have entered an order authorizing the assumption and assignment of the Medicare and Medicaid provider agreements issued to HMCE and HMCW to the Reorganized

Debtors and finding that such transfer shall not have the effect of delaying or suspending the Reorganized Debtors' ability to continue to bill and collect from Medicare, Medicaid and other payors under such provider agreements and corresponding provider numbers in the normal course without interruption.

      10.2.6    The Bankruptcy Court shall have entered an order (a) determining that neither Debtors nor Reorganized Debtors are subject to any unresolved, unpaid, or unliquidated claims for alleged or actual violations of the so-called "Stark Law" and related regulations that occurred prior to the Effective Date of the Reorganization Plan (other than unpaid claims in connection with any settlements with CMS to which the Exit Lender has consented) and (b) barring any future actions by CMS against Reorganized Debtors with respect to any alleged or actual violations of the so-called "Stark Law" and related regulations that may have occurred prior to the Effective Date of the Reorganization Plan.

      10.2.7    St. Francis shall have determined, in its sole discretion, that the aggregate amount of Allowed Administrative Expense Claims, other than Ordinary Course Administrative Expense Claims and Professional Fee Claims, shall not exceed $50,000.

10.2.8    St. Francis shall have determined, in its sole discretion, that the aggregate amount of Allowed Priority Tax Claims shall not exceed $1,600,000.

10.2.9    St. Francis shall have determined, in its sole discretion, that the aggregate amount of Allowed Priority Non-Tax Claims shall not exceed $50,000.

10.2.10  All other documents material to the consummation of the transactions contemplated under the Plan shall be in a form acceptable to St. Francis.

10.2.11  All definitive documentation affecting the treatment of the MidCap Secured Claim (including without limitation, the Exit Facility and the structure of the Reorganized Debtors) shall be in a form acceptable to the Debtors, St. Francis and MidCap.

10.2.12  The Plan shall not have been amended, altered or modified from the Plan as confirmed, in any material respect, unless such amendment, alteration or modification has been consented to in accordance with Section 14.1, and all Exhibits to the Plan remain in form and substance reasonably satisfactory to the Debtors.

10.2.13  The Effective Date has occurred by September 1, 2011.

10.3   <u>Waiver of Conditions to the Confirmation or Effective Date</u>.  The conditions to Confirmation set forth in Sections 10.1 and the conditions to the Effective Date set forth in Sections 10.2 may be waived, in writing, in whole or in part by the Debtors, with the prior written consent of St. Francis and MidCap, at any time without an order of the Bankruptcy Court, <u>provided</u>, <u>however</u>, that the provisions in Sections 10.2.7, 10.2.8, and 10.2.9 may only be waived by St. Francis in its sole discretion.

10.4   <u>Effect of Nonoccurrence of Conditions to the Effective Date</u>.  If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 10.3, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; *provided*, *however*, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this Section 10.4, (1) the Plan will be null and void in all respects, including with respect to:  (a) the discharge of Claims and termination of Interests pursuant to section 1141 of the Bankruptcy Code;

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 70 of 105

(b) the assumptions, assignments or rejections of Executory Contracts and Unexpired Leases pursuant to Article VI; and (c) the releases described in Section 13.6; and (2) nothing contained in the Plan will:  (a) constitute a waiver or release of any claims by or against, or any Interest in, the Debtors; or (b) prejudice in any manner the rights of the Debtors, or any other party in interest.

## ARTICLE XI
## CRAMDOWN

11.1  The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan, with the prior written consent of St. Francis and MidCap, to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE XII
## RETENTION OF JURISDICTION
## AND MISCELLANEOUS MATTERS

12.1  Retention of Jurisdiction.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Reorganization Cases and any of the proceedings related to the Reorganization Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent

71

permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

12.1.1   establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense Claim or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with Bankruptcy Code § 505), resolve any objections to the allowance or priority of Claims, Administrative Expense Claim or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense Claim or Interest pursuant to the Plan;

12.1.2   grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

12.1.3   resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any

72

Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims, Cure Amount Claims, or Administrative Expenses arising therefrom;

12.1.4    ensure that distributions to Holders of Allowed Claims or Administrative Expense Claims are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

12.1.5    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

12.1.6    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

12.1.7    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 73 of 105

enforcement of the Plan or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan and the Confirmation Order or any Person's rights arising under or obligations incurred in connection with the Plan or the Confirmation Order; provided, however, that, absent a Reorganized Debtors' request or consent, such retention of jurisdiction shall not apply to any cases, controversies, suits or disputes that may arise in connection with a Reorganized Debtors' or any other Person's rights or obligations as: (a) the issuer or Holder, respectively, of any securities issued or delivered pursuant to the Plan; or (b) a party to any agreements governing, instruments evidencing or documents relating to the securities issued or delivered pursuant to the Plan;

        12.1.8    subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in

any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

12.1.9    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order,

12.1.10  consider and act on the compromise and settlement of any Claim against, or Right of Action of the Debtors or the Estates;

12.1.11  decide or resolve any Rights of Action under the Bankruptcy Code, including without limitation, Avoidance Actions and claims under sections 362, 510, 542 and 543 of the Bankruptcy Code;

12.1.12  enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtors or the Reorganized Debtors wherever located;

12.1.13  hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including

times prior) to the Effective Date or relating to the administration of the Reorganization Cases, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Reorganized Debtors, and (iv) estimation or allowance of any tax claims asserted against the Debtors or Reorganized Debtors;

12.1.14 determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

12.1.15 enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Reorganization Cases or the Plan;

12.1.16 remand to state court any claim, cause of action, or proceeding involving the Debtors that was removed to federal court in whole or in part in reliance upon 28 U.S.C. § 1334;

12.1.17 determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19   Filed  06/21/11   Page 76 of 105

agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

12.1.18 determine any other matter not inconsistent with the Bankruptcy Code; and

12.1.19 enter an order concluding the Reorganization Cases.

12.2 Headings. The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

12.3 Notices. All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail addressed to: The Debtors:

> Hawaii Medical Center East
> 2230 Liliha Street
> Honolulu, Hawaii 96817
> Attn: Colin Dang, M.D.
> Telephone: (808) 547-6011
> Facsimile: (808) 547-6611

with a copy to:

> McDonald Hopkins LLC
> 600 Superior Avenue, E.
> Suite 2100
> Cleveland, Ohio 44114
> Attn: Shawn M. Riley
> Telephone: (216) 348-5400
> Facsimile: (216) 348-5474

The Reorganized Debtors:

    St. Francis Hospitals Hawaii
    2226 Liliha Street
    Suite 227
    Honolulu, HI 96817
    Attn : Jerry J. Correa
    Telephone: (808) 547-8004
    Facsimile: (808) 547-8018

With a copy to:

    Dewey & LeBoeuf LLP
    333 South Grand Avenue, Suite 2600
    Los Angeles, CA 90071
    Attn: Joshua M. Mester
    Telephone: (213) 621-6200
    Facsimile: (213) 621-6100

       -and-

    McCorriston Miller Mukai MacKinnon LLP
    Five Waterfront Plaza, 4th Floor
    500 Ala Moana Boulevard
    Honolulu, HI 96813
    Attn : Stewart Pressman
    Telephone : (808) 529-7300
    Facsimile : (808) 535-8037

All notices and requests to any Person holding of record any Claim, Administrative Expense or Interest shall be sent to such Person at the Person's last known address, or if known by the Debtors, to the last known address of the Person's attorney of record. Any such Person may

78

designate in writing any other address for purposes of this Section of the Plan, which designation will be effective on receipt.

12.4  Successors and Assigns.  The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

12.5  Committee.  Any Committee appointed in the Bankruptcy Cases shall be terminated on the Effective Date.

12.6  Severability of Plan Provisions.  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 79 of 105

have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

12.7 <u>No Waiver</u>.  Neither the failure of any Debtor to list a Claim in the Debtors' Schedules, the failure of any Debtor to object to any Claim or Interest for purposes of voting, the failure of any Reorganized Debtor to object to a Claim, Administrative Expense Claim or Interest prior to Confirmation or the Effective Date, the failure of any Debtor to assert a Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of any Reorganized Debtor or any other party with respect to a Claim, Administrative Expense Claim, Interest or Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of any Debtor or its successors, before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, Administrative Expense Claim or Interest, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

12.8 <u>Inconsistencies</u>.  In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 80 of 105

Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

## ARTICLE XIII
### EFFECT OF CONFIRMATION

13.1 <u>Binding Effect of Confirmation</u>. Confirmation will bind the Debtors, all Holders of Claims, Administrative Expense Claims or Interests and other parties in interest to the provisions of the Plan whether or not the Claim, Administrative Expense Claim or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense Claim or Interest has accepted the Plan.

13.2 <u>Good Faith</u>. Confirmation of the Plan shall constitute a finding that: (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of this Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

13.3 <u>No Limitations on Effect of Confirmation</u>. Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 81 of 105

13.4   Discharge of Claims, Administrative Expenses and Interests.
Except as provided in the Plan or Confirmation Order, the rights afforded
hereunder and the treatment of Claims, Administrative Expense Claims and
Interests thereunder will be in exchange for and in complete satisfaction,
discharge and release of all Claims and Administrative Expense Claims
and termination of all Interests, including any interest accrued on Claims
from the Petition Date.  Except as provided in the Plan or the Confirmation
Order, Confirmation will: (i) discharge the Debtors and Reorganized
Debtors from all Claims, Administrative Expense Claims or other debts that
arose before the Confirmation Date and all debts of the kind specified in
sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not
(a) a proof of Claim based on such debt is filed or deemed filed pursuant to
section 501 of the Bankruptcy Code, (b) a Claim based on such debt is
allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of
a Claim or Administrative Expense Claim based on such debt has accepted
the Plan; and (ii) terminate all Interests and other rights of Interest Holders
in the Debtors.  As of the Confirmation Date, except as provided in the Plan
or the Confirmation Order, all Persons shall be precluded from asserting
against the Debtors, the Reorganized Debtors, their successors or their
property, any other or further claims, debts, rights, causes of action,

liabilities or equity interests based upon any act, omission, transaction or other activity of any nature that occurred prior to the Confirmation Date. For greater certainty, no guarantee executed by any person other than a Debtor shall be discharged or otherwise affected by this Plan or by the Confirmation Order. All such guarantees shall remain in full force and effect.

13.5 <u>Judicial Determination of Discharge</u>. As of the Confirmation Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors and the Reorganized Debtors any other or further Claims, Administrative Expense Claims, Interests, debts, rights, causes of action, liabilities, or equity interests based on any act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date. In accordance with the foregoing, except as provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims, Administrative Expense Claims and other debts and liabilities against the Debtors and termination of all such Interests and other rights of Interest Holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharges shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 83 of 105

a discharged liability, Claim, or Administrative Expense Claim or terminated Interest.

13.6 <u>Injunctions</u>.  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is satisfied or released, as applicable, or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions on account of any such discharged or satisfied Claims, debts or liabilities or terminated Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Estates, the Reorganized Debtors or their respective property, other than to enforce any right pursuant to the Plan to a distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors or their respective property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtors, Estates, the Reorganized Debtors or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors, Estates, or the Reorganized Debtors; and (e) commencing or

U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 84 of 105

continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

13.6.1    As of the Effective Date, all Persons that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against any released Person or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities:  (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Lien; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Person; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

13.6.2    By accepting any distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section 13.6.

13.7 <u>Plan Distributions and Transfers Deemed Not To Be Fraudulent Transfers</u>. The Confirmation Order is to be a judicial determination that no distribution or transfer of Cash, securities or other property under the Plan by the Debtors or Reorganized Debtors is to be deemed to have been made with the actual intent to hinder, delay, or defraud any creditor. Moreover, the Confirmation Order shall also be a judicial determination that, with respect to a timely distribution or transfer by the Debtors or Reorganized Debtors of Cash, securities or other property which was required under the Plan to be made on, or as soon as practicable after, the Effective Date, the Debtors or Reorganized Debtors (1) were solvent at the time of such distribution or transfer and immediately thereafter, (2) were not left thereby with an unreasonably small amount of assets with respect to its intended business or transactions, and (3) did not intend to incur, did not believe they would incur, and reasonably should have believed they would not incur, debts beyond their ability to pay as they became due.

ARTICLE XIV
<u>MODIFICATION OR WITHDRAWAL OF PLAN</u>

14.1  The Debtors may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the

86

Bankruptcy Court may otherwise order, and the Debtors reserve the right to amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation if the Debtors, with the prior written consent of St. Francis and MidCap, determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan, provided, however, .

14.2　After confirmation of the Plan, the Debtors may, with the prior written consent of St. Francis and MidCap, apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan.  After confirmation of the Plan, the Debtors may, with the prior written consent of St. Francis and MidCap, apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.  Notwithstanding anything in the foregoing to the contrary, the Plan may not be altered, amended or modified (i) without the written consent of the Debtors or their successors, St. Francis and MidCap, or (ii) in a manner otherwise inconsistent with the Restructuring Support Agreement.

14.3　The Debtors reserve the right, with the prior written consent of St. Francis and MidCap, to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void (including, <u>without limitation</u>, (1) any discharge of Claims and

U.S. Bankruptcy Court - Hawaii　#11-01746　Dkt # 19　Filed　06/21/11　Page 87 of 105

Administrative Expenses and termination of Interests pursuant to section 1141 of the Bankruptcy Code will be deemed null and void, (2) the assumptions, assumptions and assignments or rejections of executory contracts and unexpired leases pursuant to the Plan will be deemed null and void, and (3) nothing contained in the Plan will (a) constitute a waiver or release of any Right of Action, Claim, Administrative Expense or Interest or (b) prejudice in any manner the rights of the Reorganized Debtors).

## ARTICLE XV
## CONFIRMATION REQUEST

15.1  The Debtors request that the Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

DATED:  Honolulu, Hawaii

June 21, 2011

_Kenneth J. Silva_

Hawaii Medical Center, Hawaii Medical
Center – West, and Hawaii Medical
Center East
Kenneth J. Silva
Member, Board of Directors

**Plan Exhibit 5.7**

**(Exit Facility Term Sheet)**



**Maurice Amsellem**
  Managing Director

**MidCap Financial LLC**
7735 Old Georgetown Rd.
Suite 400
Bethesda, MD 20814
301.841.6437

June 20, 2011

Mr. Jerry Correa
St. Francis Healthcare System of Hawaii
2226 Liliha Street
Honolulu, Hawaii 96817

Ms. Suanne Morikuni
Chief Financial Officer
Hawaii Medical Center
PO Box 29840
Honolulu, Hawaii 96820

Dear Jerry and Suanne:

We are pleased to advise you that MidCap Financial, LLC or one of its affiliates ("MidCap Financial") will consider establishing a master revolving line of credit facility (the "Facility") under the terms and conditions set forth below with St. Francis Hospitals Hawaii, a Hawaii nonprofit corporation ("SFHH") and successor-by-merger to Hawaii Medical Center ("HMC"), St. Francis Hospital-Liliha, a Hawaii nonprofit corporation ("SFH-Liliha") and successor-by-merger to Hawaii Medical Center East ("HMCE"), and St. Francis Hospital-Ewa, a Hawaii nonprofit corporation ("SFH-Ewa" and together with SFHH and SFH-Liliha, the "Reorganized Debtors") and successor-by-merger to Hawaii Medical Center West ("HMCW" and together with HMC and HMCE, the "Debtors") to repay in full Debtors' debtor-in-possession credit facility as part of the Reorganized Debtors exit from protection under Chapter 11 of the bankruptcy code and provide for the Reorganized Debtors' ongoing working capital requirements. Funding and closing of the Facility shall be concurrent with the effective date of a Plan of Reorganization for the Reorganized Debtors in form and substance reasonably acceptable to MidCap Financial (the "Reorganization Plan") in the jointly administered bankruptcy case to be filed by Debtor in the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court"). Please note that any funding under this proposal is subject to due diligence, legal documentation and credit committee approval.

| | |
|---|---|
| Borrower: | The Reorganized Debtors (defined above). The Reorganized Debtors' only business operations shall be the ownership and operation of two hospitals on the island of Oahu, Hawaii previously operated by HMCW and HMCE (the "Hospitals"). |
| Lender: | MidCap Financial |

Please initial upon approval _Sm_
CHICAGO/#2187171.9

Facility:  Revolving Line of Credit

Maximum Loan Amount:  The maximum loan amount under the Facility (the "Maximum Loan Amount") shall be $15,000,000. The amount available to the Reorganized Debtors under the Facility at any one time shall be based upon the Availability (as described below).

Availability:  Availability under the Facility shall be an amount equal to the sum of (a) up to 85% of the Net Collectable Value of the Reorganized Debtors' accounts receivable generated directly and exclusively from the delivery by Reorganized Debtors (or any of them) of medical, surgical, diagnostic, treatment or other professional or medical or healthcare related services and/or the supply of goods related to any of such services (whether such services are supplied by a Reorganized Debtor or a third party), due from eligible direct and third-party payors plus (b) 95% of the outstanding balance of one or more certificates of deposit issued to Reorganized Debtors (or any of them) by a bank acceptable to Lender, having a term acceptable to Lender, and pledged to Lender as additional collateral for the Facility (the "CD Availability"); provided that (i) the balance of such certificate of deposit shall be funded with the proceeds of a third-party cash equity investment in the Reorganized Debtors (and not with cash-on-hand or proceeds of revolving loans) and (ii) not more than $3,000,000 of Availability shall be derived from such certificate(s) of deposit. The Net Collectable Value of the Reorganized Debtors' accounts receivable is the amount the Reorganized Debtors bill such payors less bad debt, contractual allowances and other standard ineligibles, which shall be determined based upon the existing credit agreement between the Debtors and Lender. Availability under the Facility shall be reduced for such availability reserves and/or adjustments as may be established and maintained from time to time by Lender in its sole discretion.

At any time, upon written request from the Reorganized Debtors to Lender, some or all of the CD Availability may be released to the Reorganized Debtors and excluded from the Availability calculation (each, a "CD Availability Reduction"); provided that, if, after giving pro forma effect to a requested CD Availability Reduction, the outstanding principal balance of revolving loans would exceed the Availability, the Reorganized Debtors must prepay the outstanding revolving loans in the amount of such excess before such CD Availability Reduction shall be effective. The CD Availability, after giving effect to a CD Availability Reduction shall be referred to as the "Reduced CD Availability"). Upon the effectiveness of a CD Availability Reduction, Lender shall: (i) in the event the Reduced CD Availability equals $0, cause the certificates of deposit pledged to Lender as collateral security for the CD Availability to be returned to


U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 92 of 105

the Reorganized Debtors and (ii) consent to the disbursement of funds evidenced by the certificate(s) of deposit as necessary to cause the Reduced CD Availability to equal 95% of the outstanding balance of such certificate(s) of deposit.

**Minimum Balance:**   The Reorganized Debtors shall maintain a minimum drawn balance under the Facility of no less than 85% of Availability (as defined above).

**Term:**   36 months

**Interest and Fees:**   Interest on the outstanding balance of the Facility shall be payable monthly in arrears at an annual rate of reserve-adjusted, 30-day LIBOR, as determined by Lender in accordance with its customary procedures (subject to a 2.50% floor) plus 5.50%, reset monthly. Interest shall be calculated on the basis of the actual number of days elapsed in a 360 day year. Collections of cash by Lender under the Revolver shall be credited to the Reorganized Debtors' obligations thereunder on a daily basis, subject to six business clearance days.

The Reorganized Debtors shall pay Lender a collateral management fee of .125% per month on the greater of (i) the Average Outstanding Balance (expressed as a numeral, not a fraction) during the immediately preceding month (or portion thereof, as applicable) and (ii) the Minimum Balance. The "Average Outstanding Balance" means an amount calculated each month equal to a fraction the numerator of which is equal to the sum of the outstanding balances of all revolving loans under the facility for each day of such month and the denominator of which is the number of actual days in such month.

The Reorganized Debtors shall pay Lender an unused line fee equal to .042% per month on the average unused portion of the Facility. The average unused portion of the Facility shall be the difference between (i) the commitment for the Facility and (ii) the greater of (A) the Average Outstanding Balance during each month (or portion thereof, as applicable) and (B) the Minimum Balance.

**Prepayment:**   If the Facility is terminated prior to the end of the Term, the Reorganized Debtors shall pay to Lender a fee as compensation for the costs of being prepared to make funds available to the Reorganized Debtors throughout the Term equal to an amount determined by multiplying the Maximum Loan Amount by the following percentage: (i) if the Facility is terminated prior to the first anniversary of the closing of the Facility, 2.5%, (ii) if the Facility is terminated on or after the first anniversary of the closing of the Facility but before the second anniversary of the closing of the Facility, 1.5%; and (iii) if the Facility is terminated on or after the second anniversary of the closing of the Facility, 1.0%; provided, however, that there shall be no fee due


U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 93 of 105

if the Facility is terminated during the last 90 days prior to the third anniversary of the closing of the Facility.

**Security:** Lender shall receive a perfected first priority security interest in (i) all of the Reorganized Debtors' existing and future accounts receivable, (ii) healthcare permits, (iii) deposit accounts, (iv) cash and (v) other accounts receivable-related items of the Reorganized Debtors (collectively, the "Collateral").

**Additional Collateral Support:** As additional collateral support, Reorganized Debtors shall collaterally assign to Lender a certificate of deposit issued to Reorganized Debtors (or any of them) with a balance of $2,000,000 issued by a bank acceptable to Lender and having a term acceptable to Lender. The certificate of deposit shall be funded with the proceeds of a third-party cash equity investment in the Reorganized Debtors (and not with cash-on-hand or proceeds of revolving loans).

**Financial Covenants:** Reorganized Debtors shall maintain a Minimum Monthly Net Revenue covenant, measured monthly at the end of the first full month after closing and continuing until the end of the fifth full month after closing, equal to 80% of the projected net revenue for the Reorganized Debtors as shown on the monthly proforma statement of operations for fiscal year 2012 delivered by Reorganized Debtors and accepted by Lender prior to the closing.

Reorganized Debtors shall maintain a Fixed Charge Coverage Ratio, measured quarterly at the end of each fiscal quarter, of not less than (i) 1.00:1.00 for the fiscal quarters beginning with the second full fiscal quarter after closing and continuing through the third full fiscal quarter after closing; (ii) 1.03:1.00 for the fourth full fiscal quarter after closing and continuing through the seventh full fiscal quarter after closing; (iii) 1.05:1.00 for the eighth full fiscal quarter after closing and continuing through the eleventh full fiscal quarter after closing; and (iv) 1.10:1.00 for each fiscal quarter ending thereafter.

**Other Terms:** The Reorganized Debtors shall maintain and pay for depository accounts (collectively, the "Lock Box Account") subject to a control agreement satisfactory to Lender, into which the Reorganized Debtors' cash collections of accounts receivable generated directly and exclusively from the delivery by Reorganized Debtors (or any of them) of medical, surgical, diagnostic, treatment or other professional or medical or healthcare-related services and/or the supply of goods related to any of such services (whether such services are supplied by a Reorganized Debtor or a third party) (collectively, "Health Care Related Receipts") shall be remitted. Such control agreements shall provide for a daily sweep to Lender of all sums collected in the Lock Box Account. Separate Lock Box Accounts shall be required for

Please initial upon approval _____
CHICAGO/#21871719



governmental and commercial receivables.

Lender shall perform periodic field audits on the Reorganized Debtors' books and records and collateral-related information; provided that, except for field audits conducted during the existence of an event of default, the Reorganized Debtors shall not be required to pay for more than three such field audits with respect to each calendar year.

All cash collections of Collateral, other than Health Care Related Receipts and any certificates of deposit, shall be deposited into one or more deposit accounts subject to a control agreement satisfactory to Lender (collectively, the "Non-Lock Box Account"). Notwithstanding Lender's control over the Non-Lock Box Account, the Reorganized Debtors shall have the right to use funds on deposit in the Non-Lock Box Account so long as no default has occurred and is continuing.

**Loan Documents:** The Reorganized Debtors shall execute and deliver to Lender such loan and security agreements, instruments, documents, certificates, and assurances as are reasonable and customary for similar loans, and as Lender may reasonably require in connection with the closing of the Facility. Such loan document shall provide, among other things, that Lender shall have the right to assign the Facility in whole or in part, at its discretion.

Lender shall receive an opinion from the Reorganized Debtors' counsel satisfactory to Lender.

**Other Closing Conditions:**

- Prior to closing, HMC shall have merged with and into SFHH and HMC shall cease to exist; HMCE shall have merged with and into SFH-Liliha and HMCE shall cease to exist; and HMCW shall have merged with and into SFH-Ewa and HMCW shall cease to exist.

- Immediately following the full and complete closing of the Loan and the "Effective Date" of the Reorganization Plan, on a pro forma basis assuming that all administrative and professional fees are paid on or before the closing of the Facility, the Reorganized Debtors shall have unrestricted cash on hand (excluding cash held for taxes, deposits, accrued insurance expenses, workers' compensation payables and other designated expenses or obligations) in an amount equal to at least $1,500,000.

- The Reorganization Plan, the terms of which shall be subject to Lender's legal review and approval, and the Confirmation Order shall specifically authorize the Reorganized Debtors to


U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 95 of 105

enter into the Facility and permit the liens and security interests described herein.

- All orders of the Bankruptcy Court approving the Reorganization Plan, including the Confirmation Order, must be final and non-appealable with all applicable appeal periods having expired without appeal and with no injunctions, motions, challenges or other possible impediments to closing in existence. The Reorganization Plan shall have become effective on or prior to the closing date of the Facility.

- All liens and security interests of Lender required herein and otherwise provided for in the Loan Documents shall be and appear first in time as a matter of public record.

- All obligations of the Reorganized Debtors to any legal or beneficial owners of the Reorganized Debtors shall be subordinated in right and time of payment to the Reorganized Debtors obligations to Lender pursuant to subordination agreements acceptable to Lender; provided that, notwithstanding the foregoing, regularly scheduled lease payments payable under the Hospital Leases (as defined below) shall not be required to be subordinated.

- All licenses and Medicaid, Medicare and commercial insurance company provider numbers and participation agreements issued to HMCE and HMCW currently in effect shall continue to remain in full force and effect after the Effective Date of the Reorganization Plan without impairment or limitations such that accounts receivable arising out of Medicaid/Medicare reimbursement programs and other third party payor reimbursement or payment programs shall continue to be billed and collected in the normal course without interruption. Without limiting the generality of the foregoing, the Reorganized Debtors shall not have rejected assignment of the Medicare and Medicaid provider agreements issued to HMCE and HMCW. Lender shall receive, prior to closing, written evidence acceptable to Lender confirming that there are no licensure or change or ownership application, notice or other requirements under the laws of the State of Hawaii or under Medicare laws or regulations (other than those with respect to which Reorganized Debtors have fully complied) that could have the effect of delaying or suspending the Reorganized Debtors ability to continue to bill and collect from Medicare, Medicaid and other payors in the normal course without interruption.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 96 of 105

- The Bankruptcy Court shall have entered an order (a) determining that neither Debtors nor Reorganized Debtors are subject to any unresolved, unpaid, or unliquidated claims for alleged or actual violations of the so-called "Stark Law" that occurred prior to the Effective Date of the Reorganization Plan (other than unpaid claims in connection with any settlements with CMS to which Lender has consented) and (b) barring any future actions by CMS against Reorganized Debtors with respect to any alleged or actual violations of the so-called "Stark Law" that may have occurred prior to the Effective Date of the Reorganization Plan.

- Concurrently with the funding of the initial loans (which shall repay Debtor's debtor-in-possession credit facility), the Reorganized Debtors shall have made all payments required to be made on the effective date of the Reorganization Plan. No subordinate liens shall be permitted upon any of Lender's collateral. All pre-petition indebtedness and obligations of Debtor owed to Lender shall have been paid in full.

- Lender shall be reasonably satisfied with the terms of the operating leases that will be entered into by the Reorganized Debtors (or any of them) with respect to the Hospitals (the "Hospital Leases").

**Facility Costs:** All reasonable costs associated with the Facility, including, but not limited to Lender's out-of-pocket expenses associated with the transaction, professional fees, recording fees, search fees, and filing fees will be paid by Debtors or the Reorganized Debtors regardless of whether the transaction closes. Upon acceptance of the general terms of this letter, Lender shall be paid a non-refundable $35,000 deposit, which amount shall be applied against the Facility costs. Additional deposits shall be made by Debtors or the Reorganized Debtors as requested by Lender.

**Governing Law/Waiver of Jury Trial:** This term sheet and the loan documents shall be governed by and construed in accordance with the laws of the State of Maryland. Each of the parties hereto waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Loan or the other transactions contemplated hereby, or the performance by us or any of our affiliates of the services contemplated hereby.

**Exclusivity:** Debtors understand that Lender will invest significant resources into making financial, legal and collateral investigations and determinations, and that Lender will incur opportunity costs in pursuing such investigations and determinations for this Facility.

Please initial upon approval _Bm_
CHICAGO#2187171.9



U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 19   Filed  06/21/11   Page 97 of 105

Accordingly, Debtors agree that, during the "Feasibility Period" defined below, Debtor, any Reorganized Debtor and any of their principals and affiliates will (a) not close any loan or extend or refinance any existing financing for any entity listed herein as "Borrower", or sign a term sheet with or otherwise engage another lender for such purpose, (b) negotiate exclusively with Lender regarding any financing, the purpose of which is substantially the same as that of the proposed Facility, and (c) act in good faith and with reasonable diligence and dispatch to provide all requested access, information, and documentation to allow Lender to pursue approval of the proposed Facility and closing if the Facility is approved by Lender's credit committee. If any Debtor or any Reorganized Debtor fails to comply with the requirements of the preceding sentence, then Debtors or Reorganized Debtors shall pay to Lender, on demand, liquidated damages equal to 1.0% of the Maximum Loan Amount, such payment to be in addition to any deposit(s) paid to Lender and any other reimbursement obligations of the Debtors and Reorganized Debtors hereunder. The "Feasibility Period" means the period commencing as of the date hereof and continuing until the earlier of (a) the closing of the Facility, (b) a determination by Lender not to pursue such transaction, or (c) 60 days from the acceptance date hereof (which 60-day period will automatically be extended to 90 days if Lender obtains credit committee approval for the Facility substantially in accordance with the terms described herein). Debtors agree, on their own behalf and on behalf of the Reorganized Debtors, that such liquidated damages are a reasonable approximation of the damages Lender will sustain by reason of Debtors' or Reorganized Debtors' breach of their agreements in this paragraph.

The terms of the Facility as set forth herein are for discussion purposes only and this term sheet does not imply in any way a commitment by Lender to enter into the Facility or to submit the Facility to Lender's credit committee for approval. Lender may terminate its review of the Facility at any time in its sole discretion, but shall provide written notice of any decision not to pursue such transaction to Debtors within two (2) Business Days after such decision is made. Lender will make the loans summarized above only upon further due diligence and underwriting of the transaction, approval through Lender's credit approval process, Lender's continuing satisfaction with the financial and business conditions of the Reorganized Debtors and its principals, and receipt of documentation and assurances satisfactory to Lender and its legal counsel. This term sheet does not purport to specify all of the terms, conditions, representations and warranties, covenants and other provisions that will be contained in the final Financing Documents for the Facility, if approved by Lender. The Facility shall be subject to such other terms, covenants and conditions as Lender deems appropriate in its sole discretion.

This term sheet is being delivered in reliance that all information provided to Lender is and will be accurate and complete. The contents of this term sheet may not be shared with any third party


U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 98 of 105

without Lender's prior written consent, except for management and regulatory bodies on a need-to-know basis. All persons who are informed of the contents of this term sheet also need to be informed that such contents are confidential and cannot be disclosed without Lender's prior written consent.

Notwithstanding anything else contained herein, Debtors hereby expressly agree, on their own behalf and on behalf of the Reorganized Debtors, to be bound by the provisions of this term sheet relating to confidentiality, exclusivity and expense reimbursement.

This term sheet supersedes all previous discussions, communications and proposals relating in any way to the Facility and shall expire if not executed by Debtors and returned to Lender by 10:00 p.m. EST on June 20, 2011.

MidCap Financial hereby notifies Debtors that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act") and MidCap Financial's policies and practices, MidCap Financial is required to obtain, verify and record certain information and documentation that identifies each of the Reorganized Debtors, which information includes the name and address of each of the Reorganized Debtors and such other information that will allow MidCap Financial to identify each of the Reorganized Debtors in accordance with the Act.

If you would like Lender to continue reviewing your loan request, please evidence your agreement with the forgoing by accepting this proposal on the space set forth below, and returning it, to my attention. Please also wire the good faith deposit to the following:

| | |
|---|---|
| Bank Name and Address: | SunTrust Bank |
| | 25 Park Place |
| | Atlanta, GA 30303 |
| ABA/Routing Number: | 061000104 |
| Swift Code: | SNTRUS3A |
| Account Name and Address: | MC SERVICECO LLC |
| | 7735 Old Georgetown Rd. |
| | Suite 400 |
| | Bethesda, MD 20814 |
| ACCT: | 1000113400443 |
| ATTN: | Hawaii Medical – Exit Facility |



U.S. Bankruptcy Court - Hawaii  #11-01746  Dkt # 19  Filed  06/21/11  Page 99 of 105

Upon receipt, we will immediately begin due diligence, Lender's credit process, and legal documentation. We appreciate the opportunity to furnish this proposal to you. If you have any questions, please do not hesitate to call.


Very Truly Yours,


Name: Maurice Amsellem
Title: Managing Director

Please initial upon approval
CHICAGO#2187171.9

midcap

Agreed and accepted this ___ day of
_____, 2011.

_____

HAWAII MEDICAL CENTER, a Hawaii
nonprofit corporation

By: _Suanne Morikuni_____

Name: Suanne Morikuni

Title: Chief Financial Officer

HAWAII MEDICAL CENTER EAST, a Hawaii
nonprofit corporation

By: _Suanne Morikuni_____

Name: Suanne Morikuni

Title: Chief Financial Officer

HAWAII MEDICAL CENTER WEST, a Hawaii
nonprofit corporation

By: _Suanne Morikuni_____

Name: Suanne Morikuni

Title: Chief Financial Officer

Please initial upon approval _SM_
CHICAGO/#2187171.9

midcap

# Plan Exhibit 6.4

## (Modifications to the St. Francis Leases)

# Modifications to St. Francis Leases

1.  <u>Premises</u>:  The definition of "premises" under the St. Francis Leases shall be modified to include the real property being transferred to the St. Francis Designees under the Plan.

2.  <u>Rent</u>:  The aggregate amount of rent under the St. Francis Leases shall be $2,000,000 per annum in year one, and $2,500,000 per year thereafter.

3.  <u>Other Modifications</u>:  The St. Francis Leases shall also be modified in a manner consistent with the changes in the scope of the premises and may include such other terms as are consistent for leases of this type, including without limitation the following; provided that the St. Francis Leases shall not be modified in any manner, nor shall any additional agreements be entered into in connection with the modification of the St. Francis Leases, that consensually grant St. Francis or its designees a lien on and/or security interest in any assets of the Reorganized Debtors:

    a.  Deletion of all lender protection provisions.

    b.  Deletion of all provisions prohibiting the use of the land for medical office space and parking facilities purposes.

c.    Deletion of the lessee's option to purchase the land at the end of the lease term.

d.    Insertion of provisions relating to the construction and alteration of improvements, including without limitation, financial and bonding requirements.

e.    Insertion of provisions relating to the lessee's obligation to repair and restore the improvements in the event that the improvements are damaged.

f.    Insertion of provisions relating to the lessee's obligation to remove equipment and trade fixtures at the end of the lease term.

g.    Deletion of the lessee's obligation to provide parking on and access over the premises.

h.    Amendment of the condemnation provisions to reflect that the lease is now a lease of the land and the improvements.

i.    Deletion of the cross default provisions relating to the other ground lease.