PACHULSKI STANG ZIEHL & JONES LLP
Samuel Maizel (CA Bar No. 189301)
Malhar Pagay (CA Bar No. 189289)
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310-277-6910
Facsimile: 310-201-0760
E-mail: smaizel@pszjlaw.com; mpagay@pszjlaw.com

WAGNER CHOI & VERBRUGGE
James A. Wagner
Chuck C. Choi
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: 808-566-1877
Facsimile: 808-566-6900
E-mail: jwagner@hibklaw.com; cchoi@hibklaw.com

Attorneys for the Official Committee of Unsecured Creditors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re:<br><br>HAWAII MEDICAL CENTER, et al.,[1]<br><br>Debtors. | Case No. 11-01746<br>Chapter 11<br>(Jointly Administered) |
|---|---|
| This document relates to:<br>ALL CASES | |

---

[1] The Debtors are as follows: Hawaii Medical Center, a Hawaii non-profit corporation (Tax No. 20-3409838); Hawaii Medical Center East, a Hawaii non-profit corporation (Tax No. 51-0598670); and Hawaii Medical Center West, a Hawaii non-profit corporation (Tax No. 51-0598672).

# MOTION FOR ORDER DISMISSING THE FOLLOWING CHAPTER 11 CASES: (I) HAWAII MEDICAL CENTER (11-01746); (II) HAWAII MEDICAL CENTER EAST (11-01747); AND (III) HAWAII MEDICAL CENTER WEST (11-01748)

The Official Committee of Unsecured Creditors (the "Committee") hereby moves ("Motion") the Court, pursuant to section 1127(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code") for an order dismissing the following jointly administered chapter 11 cases: (i) Hawaii Medical Center (case no. 11-01746), (ii) Hawaii Medical Center East (case no. 11-01747), and (iii) Hawaii Medical Center West (case no. 11-01748) (collectively, the "2011 Hawaii Medical Center Cases").[1]

In support of this Motion, the Committee respectfully sets forth and represents as follows:

## I.

## BACKGROUND

1.  On or about August 29, 2008 (the "First Petition Date"), Hawaii Medical Center East, LLC (case no. 08-01371), Hawaii Medical Center West, LLC (case no. 08-01372), Hawaii Medical Center, LLC (case no. 08-01373), and CHA Hawaii, LLC (case no. 08-01369), each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[1] The Committee is contemporaneously filing a motion to dismiss the 2008 Hawaii Medical Center Cases. Obviously, if the Court chooses to grant that motion – which is the Committee's preference – this Motion becomes moot.

2.  During the period commencing on the First Petition Date and ending in April, 2010, debtors Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC (collectively, the "2008 Debtors"), St. Francis Healthcare System of Hawaii and its affiliates ("St. Francis"), Siemens Financial Services, Inc. ("Siemens"), and the Official Committee of Unsecured Creditors in the 2008 Hawaii Medical Center Cases (defined below) worked towards the creation of a confirmable plan of reorganization. *Declaration of Kenneth J. Silva in Support of Chapter 11 Petitions and First Day Motions*, case no. 11-01746 [Docket No. 10] (the "Silva Decl."), ¶ 15.

3.  On or about May 28, 2010, the Court confirmed the *First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC* (the "2010 Plan"), with respect to Hawaii Medical Center East, LLC (case no. 08-01371), Hawaii Medical Center West, LLC (case no. 08-01372), Hawaii Medical Center, LLC (case no. 08-01373) (collectively, the "2008 Hawaii Medical Center Cases"), thereby confirming a plan of reorganization for the 2008 Debtors. The effective date for the 2010 Plan occurred on August 17, 2010 (the "2010 Plan Effective Date") (*see Notice of (A) Occurrence of Effective Date of 2010 Plan, and (B) Certain Claims' Bar Dates*, case no. 08-01369 [Docket No. 1379]).

4. Pursuant to the terms of the 2010 Plan, the 2008 Debtors, then each Hawaii limited liability companies, converted to the following new Hawaii non-profit corporations: Hawaii Medical Center, a Hawaii non-profit corporation, Hawaii Medical Center East, a Hawaii non-profit corporation, and Hawaii Medical Center West, a Hawaii non-profit corporation (collectively, the "2010 Reorganized Debtors"). As a result, all of the assets of the 2008 Debtors vested in the 2010 Reorganized Debtors.

5. Under the 2010 Plan, the 2010 Reorganized Debtors agreed to pay holders of allowed unsecured claims in full according to a payment schedule, with the first payment due on June 30, 2011 in the aggregate amount of $1.5 million. Silva Decl., ¶ 26.

6. Since their emergence, the 2010 Reorganized Debtors allege that they suffered numerous setbacks that did not allow them to reach the projected goals set forth in the 2010 Plan, or meet their financial obligations going forward. Silva Decl., ¶ 27.

7. According to the 2010 Reorganized Debtors, they failed to comply with the terms of the 2010 Plan because "the projected revenue goals included in the 2010 Plan were, in retrospect, too high." Silva Decl., ¶ 27. "Furthermore, the 2010 Plan stripped the [Hawaii Medical Center] doctors of their ownership interests in the hospitals. Additionally, the tightened budget projections did not allow for proper capital equipment upgrades. These two factors

4

DOCS_LA:243058.5
U.S. Bankruptcy Court - Hawaii #11-01746 Dkt # 240 Filed 08/22/11 Page 4 of 15

contributed to a loss of physicians, of referrals, and a corresponding loss of revenue. While revenue continued to decrease, the costs of operating the hospitals remained steady and, in some cases, increased." Silva Decl., ¶ 28.

8. The 2010 Reorganized Debtors also attribute their breach of the 2010 Plan to an audit by the Centers for Medicare & Medicaid Services ("CMS") that revealed, prior to the confirmation of the 2010 Plan, that cost reports filed by Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC, incorrectly claimed certain "bad debt" expenses. Silva Decl., ¶ 29.

9. Since December 31, 2010, the 2010 Reorganized Debtors have been in default under the 2010 Plan and a Credit Agreement with MidCap Financial, LLC ("MidCap"), that was executed on August 17, 2010 (the "MidCap Revolving Loan Agreement"), along with other agreements, documents, notes and instruments. MidCap served as the 2010 Reorganized Debtors' "exit lender" under the 2010 Plan, and made loans and extended other financial accommodations to the 2010 Reorganized Debtors. The default occurred when the 2010 Reorganized Debtors first failed to satisfy certain financial performance covenants set forth in the MidCap Revolving Loan Agreement. The financial performance covenants, which are tested quarterly beginning with the quarter-ending December 31, 2010, have never been satisfied, meaning the 2010 Reorganized Debtors continuously have failed to achieve the revenue performance goals anticipated by the 2010 Plan. Silva Decl., ¶¶ 20, 30 and 31.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 240   Filed  08/22/11   Page 5 of 15

10. Additionally, the 2010 Reorganized Debtors have defaulted on a loan agreement with St. Francis (Silva Decl., ¶ 31) and have failed to make any payments to unsecured creditors.

11. On or about January 7, 2011, the Court dismissed the chapter 11 proceeding for CHA Hawaii, LLC, case no. 08-01369. The Court, however, has neither dismissed nor entered final decrees with respect to the 2008 Hawaii Medical Center Cases.

12. On June 21, 2011 (the "Second Petition Date"), each of the 2010 Reorganized Debtors filed the following voluntary petitions for relief under chapter 11 of the Bankruptcy Code: case no. 11-01746 with respect to Hawaii Medical Center, a Hawaii non-profit corporation; case no. 11-01747 with respect to Hawaii Medical Center East, a Hawaii non-profit corporation; and case no. 11-01748 with respect to Hawaii Medical Center West, a Hawaii non-profit corporation (collectively, the "2011 Hawaii Medical Center Cases").

13. On the Second Petition Date, the 2010 Reorganized Debtors also filed the *Debtor's Plan of Reorganization* [Docket No. 19] (the "2011 Plan"). The 2011 Plan proposes, in part, to transfer all of the real property owned by the 2010 Reorganized Debtors to St. Francis and to merge the 2010 Reorganized Debtors into subsidiaries of St. Francis. Moreover, the 2011 Plan provides no recovery to holders of general unsecured claims, intercompany claims, and interests.

6
DOCS_LA:243058.5
U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 240   Filed  08/22/11   Page 6 of 15

14. On or about June 29, 2011, the Committee was appointed in the 2011 Hawaii Medical Center Cases.

15. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.

## RELIEF REQUESTED

16. Pursuant to section 1127(b) of the Bankruptcy Code, the Committee requests entry of an order dismissing the 2011 Hawaii Medical Center Cases because they are improper attempts to modify the substantially consummated 2010 Plan.

## III.

## BASIS FOR RELIEF

17. The 2011 Hawaii Medical Center Cases should be dismissed because the 2011 Plan proposes to improperly modify the 2010 Plan. The 2010 Plan has been substantially consummated, and it cannot be modified per section 1127(b) of the Bankruptcy Code. Although some courts have permitted serial chapter 11 filings, such cases are uncommon and are not allowed in circumstances such as this one, where the 2010 Reorganized Debtors are trying to circumvent the binding terms of the confirmed 2010 Plan.

7

## A. The 2011 Hawaii Medical Center Cases Attempt to Improperly Modify the 2010 Plan

18. Under section 1127(b) of the Bankruptcy Code, a debtor may not modify the provisions of a confirmed plan after it has been substantially consummated.

19. Courts agree that a reorganized debtor may not file a new plan to effect a modification of its substantially consummated plan. *In re Elmwood Dev. Co.*, 964 F.2d 508 (5th Cir. 1992); *In re Jartran. Inc.*, 886 F.2d 859, 867 (7th Cir. 1989); *In re Adams*, 218 B.R. 597, 601 (Bankr. D. Kan. 1998); *In re Woodson*, 213 B.R. 404, 405 (Bankr. M.D. Fla. 1997); *In re Northampton Corp.*, 39 B.R. 955, 956 (Bankr. E.D. Pa. 1984).

20. The terms of a confirmed plan are binding and should be given *res judicata* effect. The confirmed plan usually represents the results of negotiations between the debtor and its creditors, and the parties should be able to rely on the finality of those terms. *In re Northtown Realty Co., L.P.*, 215 B.R. 906 (Bankr. E.D.N.Y. 1998); *Adams*, 218 B.R. at 600; *Northampton*, 39 B.R. at 956.

21. Per the definition of the term "substantial consummation" in section 1101(2) of the Bankruptcy Code, a plan is substantially consummated when: (a) all or substantially all of the property to be transferred under the plan has in fact been transferred; (b) the debtor or its successor under the plan has assumed the management of all or substantially all of the property dealt with by the plan; and (c) distribution under the plan has commenced.

8

22. The term "modification" has been defined to mean to affect or alter the legal relationships among the debtor and its creditors and other parties in interest. *See e.g., In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 815 (S.D.N.Y. 1997). Modification includes a restructuring that effectively alters a payment right. *In re Joint Eastern & Southern District Asbestos Litig.*, 982 F.2d 721, 747 (2nd Cir. 1992).

23. Here, the modifications are impermissible because the 2010 Plan has been substantially consummated. First, all or substantially all of the property of the 2008 Debtors has been transferred to the 2010 Reorganized Debtors as a result of the conversion of the entities from Hawaii limited liability companies to new Hawaii non-profit corporations. Second, according to the *Amended Plan Supplement for the 2008 Plan*, filed on August 17, 2010 in the 2008 Hawaii Medical Center Cases [Docket No. 1378], the new officers and directors of the 2010 Reorganized Debtors have been appointed and have assumed management of the hospitals. Third, distributions under the 2008 Plan have commenced. Payments on certain claims such as Administrative Claims, Non-Tax Priority Claims, Other Secured Claims, Unimpaired Employee Claims and Siemens Secured Lender Claim were due on or within 30 days of the 2010 Plan Effective Date (approximately October 1, 2010). Because the 2010 Reorganized Debtors assert that they were not in default under 2010 Plan until December 31, 2010 (*See*

Silva Decl. ¶¶ 30 – 31), the Committee assumes that the 2010 Reorganized Debtors fulfilled their distribution obligations that arose before that time.

24. The 2011 Hawaii Medical Center Cases violate section 1127(b) and should be dismissed because they seek to modify the provisions of the confirmed 2010 Plan after it has been substantially consummated. The 2011 Plan proposed in the 2011 Hawaii Medical Center Cases modifies a number of provisions of the confirmed 2010 Plan. Most importantly for the Committee, the 2011 Plan proposes to pay general unsecured creditors nothing despite that the 2010 Plan promised to pay such creditors in full. *See* Silva Decl., ¶ 26. Moreover, the 2010 Reorganized Debtors would not have proposed the 2011 Plan less than one year following the 2010 Plan Effective Date unless they intended to materially modify the 2010 Plan.

25. Accordingly, the 2010 Reorganized Debtors should not be able to circumvent or evade their binding responsibilities by filing a modified plan. The 2008 Debtors have been converted into new entities, new management is in place for the 2010 Reorganized Debtors, and distributions under the 2010 Plan have commenced. Creditors and other interested parties now have acted in reliance on the terms of the confirmed 2010 Plan and in the interest of finality, the plan should no longer be subject to modification.

## B. Serial Chapter 11 Cases are Not Permitted under Section 1127(b)

26. A number of courts have ruled that section 1127(b) precludes a debtor from filing a second chapter 11 case because any plan in the second case would be a modification of the confirmed plan in the original case. *In re Roxy Real Estate Co., Inc.*, 170 B.R. 571, 576 (Bankr. E.D. Pa. 1993); *In re Miller*, 122 B.R. 360, 366-67 (Bankr. N.D. Iowa 1990); *In re AT of Maine, Inc.*, 56 B.R. 55, 57 (Bankr. D. Me. 1985); *Northampton Corp.*, 37 B.R. at 113. Accordingly, the Court should dismiss the 2011 Hawaii Medical Center Cases because any plan proposed in the 2011 Hawaii Medical Center Cases would impermissibly modify the 2010 Plan.

## C. No Unforeseen Circumstances Warrant the filing of the 2011 Hawaii Medical Center Cases

27. Successive chapter 11 cases are permitted in some jurisdictions only if the debtor establishes an extraordinary change in circumstances after substantial consummation. Because the debtor is bound by the terms of a confirmed plan and should live with the benefits and burdens of its bargain, only changes that were unanticipated and not reasonably foreseeable at the time of confirmation can justify the filing of a new plan. *In re 1633 Broadway Mars Rest. Corp.*, 388 B.R. 490, 500 (Bankr. S.D.N.Y. 2008); *Adams*, 218 B.R. at 600.

28. The Debtor bears the burden to persuade the Court that a second filing is appropriate considering the facts and circumstances of the case. *In re Bouy, Hall & Howard & Assocs.*, 208 B.R. 737, 743 (Bankr. S.D. Ga. 1995)

11

("The standard is an objective one. . . . Debtor must demonstrate more than a lack of malicious intention; instead, Debtor's affirmative duty is to convince this Court that its situation warrants the further protection of Chapter 11.").

29. So as not to undercut section 1127(b), "courts construe the concept of material change in circumstances quite narrowly." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997); *see 1633 Broadway Mars Rest. Corp.*, 388 B.R. at 500; *Roxy Real Estate Co., Inc.*, 170 B.R. at 576. Decreases in income or increases in expenses due of changes in the debtor's operations, or in the market, are foreseeable risks of doing business that do not relieve the debtor of the terms of its confirmed plan. *Adams*, 218 B.R. at 600-601.

30. For instance, in *In re Savannah, Ltd*, 162 B.R. 912, 916-17 (Bankr. S.D. Ga. 1993), the court found that an increase in competition and business costs were ordinary and foreseeable costs of doing business that did not justify a new Chapter 11 plan. Similarly, in *Elmwood Development Co., supra*, the Fifth Circuit upheld the dismissal of a serial chapter 11 case because certain "new factors" alleged by the debtor such as low occupancy levels and a depressed real estate economy "were not only foreseeable but in fact were expected" by the debtor during the prior case. 964 F.2d at 512.

31. Here, the 2010 Reorganized Debtors have failed to meet their affirmative duty to demonstrate that unanticipated changes in circumstances warrant the filing of the 2011 Hawaii Medical Center Cases. From sworn

testimony submitted by the 2010 Reorganized Debtors, they have identified the following causes for their breach of the 2010 Plan: (a) overly optimistic revenue goals (Silva Decl., ¶ 17); (b) tightened budget projections (Silva Decl., ¶ 28); (c) loss of physicians and their referrals (Silva Decl., ¶ 28); and (d) fallout from the CMS audit that was received prior to confirmation of the 2010 Plan (Silva Decl., ¶ 29). None of these factors constitute unforeseen changes that justify filing a second chapter 11 case. Instead, they were foreseen and expected when the 2010 Plan was confirmed. The revenue goals, budget reductions and loss of physicians in fact were deliberately included in the 2010 Plan, and the CMS audit was fully disclosed prior to plan confirmation.

32. These factors fall well below the standard to permit new bankruptcy cases. When the 2008 Debtors and their creditors bargained for and agreed to the terms of the 2010 Plan, the 2008 Debtors were charged with crafting a plan that could absorb economic changes and the consequences of the CMS audit. Failing that, the 2010 Reorganized Debtors understood their risk in proceeding to confirmation under terms and assumptions that could change. The occurrence of foreseeable risks associated with the 2010 Plan should not relieve the 2010 Reorganized Debtors of the terms of their confirmed 2010 Plan.

D. **The 2011 Hawaii Medical Center Cases Were Not Filed in Good Faith**

33. Lastly, the 2011 Hawaii Medical Center Cases should be dismissed because they were not filed in good faith. "Courts have repeatedly

DOCS_LA:243058.5
U.S. Bankruptcy Court - Hawaii    #11-01746    Dkt # 240    Filed 08/22/11    Page 13 of 15

found second bankruptcy reorganization filings to be in bad faith when they represent attempts to rescind agreements made in the earlier bankruptcy filing." *In re Roxy Real Estate Co.*, 170 B.R. at 574-575; *accord Elmwood Development Co.*, 964 F.2d at 513; *In re Delray Assocs. Ltd. P'ship*, 212 B.R. 511, 516 (Bankr. D. Md. 1997) (dismissing second chapter 11 case because renegotiation of previously agreed upon plan treatment is an impermissible motive for filing a successive case); *In re Miller*, 122 B.R. 360, 367 (Bankr. N.D. Iowa 1990) ("The debtors are attempting to use this Chapter 12 filing to avoid what they now perceive to be a bad deal. It is the finding of this Court that [the] filing of a successive Chapter 11 or Chapter 12 after substantial consummation of a previously confirmed Chapter 11 case for the sole purpose of renegotiating previously agreed upon plan treatment is an impermissible motive for filing the successive case"); *Weiszhaar Farms, Inc. v. Livestock State Bank*, 113 B.R. 1017, 1021 (D.S.D. 1990) ("The Bankruptcy Court also found compelling the argument that the Chapter 12 filing was an attempt to avoid triggering the valid, judicially enforceable 'drop-dead' clause contained in the stipulation entered into between the parties").

34. Here, the 2010 Reorganized Debtors filed the 2011 Hawaii Medical Center Cases for the improper motive of circumventing their obligations under the 2010 Plan. Whereas the 2010 Plan contractually bound the 2010 Reorganized Debtors to pay unsecured creditors in full over time (Silva Decl., ¶ 26), the 2011 Plan eviscerates that requirement and proposes to make no

14

distributions on account of general unsecured claims. This provision alone is an impermissible attempt to rescind terms of the 2010 Plan and justifies the dismissal of the 2011 Hawaii Medical Center Cases.

## IV.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order dismissing the 2011 Hawaii Medical Center Cases and granting such other and further relief as is just and proper under the circumstances.

Dated: August 22, 2011

        WAGNER CHOI & VERBRUGGE

        /s/ Chuck C. Choi
        Chuck C. Choi
        745 Fort Street, Suite 1900
        Honolulu, Hawaii 96813
        Telephone: 808-566-1877
        Facsimile: 808-566-6900

        PACHULSKI STANG ZIEHL & JONES LLP
        Samuel Maizel (CA Bar No. 189301)
        Malhar Pagay (CA Bar No. 189289)
        10100 Santa Monica Blvd., 11th Floor
        Los Angeles, CA 90067-4100
        Phone: (310) 277-6910
        Facsimile: (310) 201-0760

        Attorneys for the Official Committee of Unsecured Creditors