JONATHAN H. STEINER          #6084-0
MCCORRISTON MILLER MUKAI MACKINNON LLP
Five Waterfront Plaza, Fourth Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone:  (808) 529-7300
Facsimile:  (808) 524-8293
Email: steiner@m4law.com

BRUCE BENNETT (Admitted *Pro Hac Vice*)
JOSHUA M. MESTER (Admitted *Pro Hac Vice*)
DEWEY & LEBOEUF LLP
333 South Grand Avenue, 26th Floor
Los Angeles, California  90071
Telephone:  (213) 621-6000
Facsimile:  (213) 621-6100
Email: jmester@dl.com

Attorneys for St. Francis Healthcare System of Hawaii,
 St. Francis Medical Center, and St. Francis Medical Center-West

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>Hawaii Medical Center, et al.,[1]<br><br>      Debtors.<br><br><br>―――――――――――――<br>This document relates to:<br>ALL CASES | Case No.  11-01746<br>Chapter 11<br>Jointly Administered)<br><br>Judge:  Hon. Robert J. Faris<br><br>Relates to Docket No. 443 |

---

[1]   The Debtors are as follows:  Hawaii Medical Center, a Hawaii non profit corporation (Tax No. 20-3409838); Hawaii Medical Center East, a Hawaii non profit corporation (Tax No. 51-0598670); and Hawaii Medical Center West, a Hawaii non profit corporation (Tax No. 51-0598672).

**ST. FRANCIS HEALTHCARE SYSTEM OF HAWAII,
ST. FRANCIS MEDICAL CENTER, AND ST. FRANCIS
MEDICAL CENTER – WEST'S OBJECTION TO DEBTORS'
MOTION FOR ORDER: (1) APPROVING THE BIDDING PROCEDURES
AND BID PROTECTIONS UTILIZED IN CONNECTION WITH THE
PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE
FREE AND CLEAR OF LIENS; (2) SCHEDULING AN AUCTION FOR
THE SALE AND A HEARING TO APPROVE THE SALE; AND
(3) GRANTING RELATED RELIEF**

St. Francis Healthcare System of Hawaii, St. Francis Medical Center, and St.

Francis Medical Center-West (collectively, "St. Francis") hereby object to the

Debtors' Motion For Order: (1) Approving The Bidding Procedures And Bid

Protections Utilized In Connection With The Proposed Sale Of Substantially All

Assets Of The Estate Free And Clear Of Liens; (2) Scheduling An Auction For

The Sale And A Hearing To Approve The Sale; And (3) Granting Related Relief

(the "Bidding Procedures Motion").  This Objection is based upon the record in

these chapter 11 cases and the following facts and arguments:

## PRELIMINARY STATEMENT

Through the Bidding Procedures Motion and the accompanying sale motion

(the "Sale Motion"), the Debtors seek approval of a sale of substantially all of their

assets and distribution of sale proceeds in a manner that violates the fundamental

priorities in the Bankruptcy Code.  The Debtors seek approval of a sale to Prime

Healthcare Foundation and its affiliate designees ("Prime") for an initial purchase

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 2 of 17

price of $25 million. The Prime purchase price, however, will be reduced by the amount of outstanding obligations under the DIP Facility (originally held by MidCap Financial LLC ("MidCap") and now held by an affiliate of Prime) and amounts assumed by Prime under the purchase agreement. Then the Debtors propose to distribute sale proceeds, free and clear of St. Francis' liens, to holders of cure claims, administrative claims, estate professionals, the Centers for Medicare and Medicaid Services ("CMS"), and even unsecured creditors – all of whom are junior in priority to St. Francis' secured claims. In the end, the Debtors estimate that St. Francis **may** receive approximately $11 million of the sale proceeds, less than half of the original purchase price, and possibly even less if cure claims exceed the Debtors' estimate.[2] Bidding Procedures Motion at 18-19. This proposed distribution waterfall, outside of a plan of reorganization, flips the Bankruptcy Code's priority scheme on its head and cannot be approved.

The Bankruptcy Code includes protections for secured creditors to prevent such an absurd result. Chief among these protections is the secured creditor's right to credit bid its claim pursuant to section 363(k) of the Bankruptcy Code to prevent

---

[2]  The Sale Motion and Bidding Procedures Motion fail to disclose that the Debtors' are proposing to sell to Prime the funds on deposit in St. Francis' segregated cash collateral account, which currently contains approximately $3.4 million. Moreover, there is no limit on Prime's ability to assume executory contracts and unexpired leases, which correspondingly means that there is no limit on the cure amounts that may be deducted from the purchase price prior to the distribution of sale proceeds to St. Francis under the Debtors' distribution scheme.

US1 32260912.1

an undervalued sale of its collateral. The Debtors, the Committee, Prime (as assignee of MidCap), and this Court have already recognized that St. Francis has the right to credit bid at any sale of St. Francis' collateral in these cases through the express terms of the Final DIP Order. The provisions in the Final DIP Order are consistent with the statutory protections of section 363(k) of the Bankruptcy Code.

But in the Bidding Procedures Motion, despite their prior agreement and this Court's Final DIP Order, the Debtors refuse to recognize St. Francis' right to credit bid for the Debtors' assets at the proposed auction. At the same time, however, the Debtors permitted Prime to effectively credit bid (first its requested break-up fee and then the outstanding amount of the DIP Facility). St. Francis objects to a sale process that would deny it the fundamental right to protect its interest in its collateral through credit bidding at any sale.

Despite being advised that St. Francis intended to exercise its right to credit bid, the Debtors fail to cite any basis for denying St. Francis' rights. Given that the Debtors propose to shift substantial value from St. Francis to junior creditors as part of the sale, St. Francis will be forced to exercise its right to credit bid at the auction to preserve the value of its collateral. Accordingly, the Court should not approve the bidding procedures unless they are modified to expressly account for

US1 32260912.1

St. Francis' right to credit bid and such bid is valued on a dollar-for-dollar basis as a cash bid.

The Debtors also propose to pay Prime a break-up fee should Prime not be the successful bidder at the proposed auction, or in the event that the Debtors do not go forward with the sale. While St. Francis does not oppose approving a break-up fee to Prime, St. Francis does object to the extent that such break-up fee would be given a priority equal or senior to St. Francis' liens and claims in these cases or need to be paid by St. Francis as part of a credit bid. To approve a break-up fee, courts generally must find that fee meets the requirements for a priority as an administrative expense. In this case, however, because St. Francis was already present in the case well before Prime became a potential purchaser, the Prime bid does not generate a benefit to the estate in the face of a credit bid by St. Francis. Thus, St. Francis requests that the Court modify the request for a break-up fee such that St. Francis is not required to satisfy the break-up fee and any allowed break-up fee would be junior to St. Francis' existing claims, including its Adequate Protection Claims under the Final DIP Order.

Accordingly, the Court should either modify the bidding procedures as requested in this Objection or deny the Bidding Procedures Motion.[3]

_____

[3]    St. Francis also objects to the Debtors' Sale Motion, including without limitation, the Debtors' proposed distribution of sale proceeds and the sale of St. Francis' collateral free and

US1 32260912.1

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 5 of 17

# BACKGROUND

On August 17, 2010, the Debtors and St. Francis entered into that certain Term Loan A Loan Agreement (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Term Loan Agreement"), along with all agreements, documents, notes and instruments in respect thereof, in which St. Francis made loans and extended other financial accommodations to the Debtors prior to the Petition Date (the "Prepetition Term Loan"). As of the Petition Date, the principal balance owed on the Prepetition Term Loan was approximately $39,175,277 and approximately $3,149,692.32 in prepetition accrued and unpaid interest at the non-default rate remained outstanding, plus other fees and expenses.

The Debtors' obligations with respect to the Prepetition Term Loan are secured by liens against substantially all of the Debtors' assets. These liens are in a first priority position with respect to the Term Loan Priority Collateral (as defined in the Final DIP Order), which includes, among other things, the real property in which the Debtors have an interest, proceeds thereof and rents derived therefrom, including funds on deposit in the St. Francis Collateral Account maintained at First Hawaiian Bank, inventory, equipment, general intangibles, and other assets and personal property as described in the Prepetition Term Loan

clear of St. Francis' liens. St. Francis reserves all of its rights with respect to the Sale Motion

US1 32260912.1

Agreement and related documents made part of, and associated with, the Prepetition Term Loan.  St. Francis has a lien, junior to Prime (formerly MidCap), on what is referred to as the Revolving Priority Collateral (as defined in the Final DIP Order), consisting of health-care accounts and related assets, that secures the DIP Facility obligations.

The Debtors defaulted on their obligations to St. Francis under the Prepetition Term Loan Agreement as early as December 2010.  Among other things, the Debtors failed to make the first interest payment due to St. Francis and violated numerous covenants under the Prepetition Term Loan Agreement.  On February 1, 2011, St. Francis advised the Debtors by letter of the existence of numerous events of default and that St. Francis was reserving its rights under the Prepetition Term Loan Agreement.  The Debtors have not remitted a debt service payment to St. Francis since the inception of the Prepetition Term Loan Agreement, including without limitation the payment of interest or fees and expenses.

On June 20, 2011, the Debtors, St. Francis, and MidCap entered into that certain Restructuring Support Agreement in which they agreed to support confirmation of the plan of reorganization described therein and filed by the Debtors on June 21, 2011 (the "Plan").  The Plan contained several conditions to

---

and will raise these objections on or before the objection deadline for the Sale Motion.

US1 32260912.1

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 7 of 17

the occurrence of the effective date, including among other things, maximum estimated amounts for certain administrative claims, non-priority tax claims, and priority tax claims, limitations on claims asserted by CMS, the non-occurrence of an event of default under the DIP Facility, and the timely confirmation of the Plan. The Restructuring Support Agreement similarly contained numerous termination events, including, among others, the occurrence of an event of default under the DIP Facility, the occurrence of an outside date, and the absence of a material adverse change in the business of the Debtors. The Restructuring Support Agreement was never amended.

Shortly after the commencement of the Debtors' cases, the Court entered an interim order authorizing the Debtors to enter into the DIP Facility and use cash collateral. On July 25, 2011, the Court entered its "Agreed Final Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 3561, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 503(b) of the Bankruptcy Code; (II) Authorizing The Debtors To Use Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code; (III) Providing Adequate Protection To The Prepetition Secured Parties Pursuant To Sections 361, 362, And 363 Of The Bankruptcy Code; (IV) Modifying The Automatic Stay Pursuant To Section 362(d) Of The Bankruptcy Code; (V) Authorizing Execution Of Postpetition Amendment To Prepetition Revolving Credit Agreement; And (VI) Providing Related Relief"

US1 32260912.1

(the "Final DIP Order"). Among other things, under the Final DIP Order, the Debtors stipulated that the Prepetition Term Loan was secured by valid and perfected liens against substantially all of the Debtors' property, as described in the Prepetition Term Loan Agreement and related documents and waived any and all claims against St. Francis. The Debtors' admissions and waivers became binding on the Official Committee of Unsecured Creditors (the "Committee") and parties in interest on August 17, 2011 upon the expiration of the challenge period provided under the Final DIP Order.

On October 3, 2011, MidCap advised the Debtors that as a result of the issuance of the Notice of Request for Administrative Freeze Related to Recovery of Medicare Overpayments from Hawaii Medical Center East ("HMCE") and West ("HMCW") from CMS to the Hawaii Department of Human Services dated September 29, 2011, pursuant to which CMS notified Hawaii Medicaid to withhold the federal share of all Medicaid payments owed to HMCE and HMCW, a DIP Facility Termination Event occurred. MidCap asserted that it was not obligated to advance any further amounts under the DIP Facility and only made protective advances thereafter.

As with the DIP Facility, the Restructuring Support Agreement also terminated, as the result of, among other things, the occurrence of the Outside Date, the inability to satisfy the conditions to the occurrence of the effective date of

US1 32260912.1

the Plan, and the termination of the DIP Facility. In light of the termination of the Restructuring Support Agreement, St. Francis evaluated whether it would support the Debtors' efforts to confirm a plan, including any required amendments and waivers. St. Francis subsequently declined to support such a plan and the requisite additional financial commitments.

In November, Prime acquired MidCap's claims and made an offer to purchase the Debtors' assets. The Debtors have accepted that offer, which, if approved, will divert substantial value away from St. Francis and to junior creditors, such as parties to executory contracts, CMS, administrative creditors, professionals, priority claimants, and even unsecured prepetition creditors.

Accordingly, St. Francis objects to the Bidding Procedures Motion.

## ARGUMENT

**A.    The Debtors Previously Agreed That St. Francis Could Credit Bid At Any Sale.**

There should be no dispute that St. Francis is entitled to credit bid at the proposed auction. The Debtors and the Committee both previously agreed that St. Francis, as a prepetition secured creditor, would have the right to credit bid at any sale for some or all of St. Francis' collateral when they agreed to the terms of the Final DIP Order. Paragraph 31 of the Final DIP Order provides:

> Right to Credit Bid. ***Pursuant to §363(k) of the Bankruptcy Code*** and included as part of any restructuring plan subject to confirmation under

US1 32260912.1

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 10 of 17

§1129(b)(2)(A)(iii) of the Bankruptcy Code, (i) the DIP Lender shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral; and (ii) **subject to the indefeasible payment in full in cash of the DIP Obligations and the Intercreditor Agreement, each of the Prepetition Secured Parties shall have the right to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral**.  In consideration of the DIP Facility and as Adequate Protection to the Prepetition Secured Parties, it shall be an Event of Default for any of the Secured Parties to not be allowed to credit bid their respective DIP Obligations or Prepetition Secured Obligations.

Final DIP Order at ¶31 (emphasis added).

It appears that the Debtors are not opposed to the concept of credit bidding, but rather just oppose St. Francis exercising its credit bidding rights.  Indeed, in the Bidding Procedures Motion, the Debtors recognize and allow Prime to credit bid the amount of the requested break-up fee at the auction.  Bidding Procedures Motion at 17-18.  In addition, the Debtors agreed in the sale agreement with Prime that the purchase price will be set off by the amount of the DIP Obligations under the Final DIP Order owed to Prime's affiliate, effectively a credit bid.  *Id.*  The Debtors should similarly recognize St. Francis' right to credit bid as set forth in the Final DIP Order.

Accordingly, the bidding procedures should not be approved without modifications to recognize and permit a credit bid by St. Francis.

US1 32260912.1

**B.** **Section 363(k) of the Bankruptcy Code Also Requires Credit Bidding.**

Notwithstanding the provisions of the Final DIP Order, section 363(k) of the

Bankruptcy Code provides St. Francis the right to credit bid at the proposed

auction.  Section 363(k) provides:

> At a sale under subsection (b) of this section of property
> that is subject to a lien that secures an allowed claim,
> unless the court for cause orders otherwise, the holder of
> such claim may bid at such sale, and, if the holder of
> such claim purchases such property, such holder may
> offset such claim against the purchase price of such
> property.

11 U.S.C. §363(k).

As courts have made clear, section 363(k) is a fundamental substantive

protection granted to secured creditors to protect the value of their collateral.

"[C]redit bidding preserves the nonrecourse lienholder's bargain that, in the event

of default, the lienholder may seek satisfaction of the debt from the collateral."  *In*

*re Kent Terminal Corp.*, 166 B.R. 555, 567 (Bankr. S.D.N.Y. 1994) (affirming the

"absolute" and "unconditional" right of a secured party to credit bid).  The

Bankruptcy Appellate Panel in the Ninth Circuit reached a similar conclusion in *In*

*re California Hancock, Inc.*, 88 B.R. 226, 230-1 (9th Cir. B.A.P. 1988), where it

held "Fairness requires that the [lienholder] who holds a nonrecourse note, be

allowed the full amount of any value in the property.  Allowing the [lienholder] to

credit bid under §363(k) would protect the [lienholder's] interest in the full value

US1 32260912.1

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 12 of 17

of the property." *See also, In re Lake Country Investments*, 255 B.R. 588, 605 (Bankr. D. Idaho 2000); *In re Midway Investments*, 187 B.R. 382, 390-91 (Bankr. S.D. Fla. 1995).

In order to give effect to the right to credit bid, the Debtors cannot be permitted to refuse to value a credit bid, and must instead attribute to the credit bid a value at least equal to the amount of the lienholder's allowed claim being bid. Both the statutory language of section 363(k) and its legislative history provide support for valuing the credit bid in that manner. For example, section 363(k) provides that a lienholder's credit bid will "offset such claim against the purchase price of such property." 11 U.S.C. §363(k). The reference to an "offset" in the provision suggests a dollar-for-dollar credit in calculating the value of the credit bid. *E.g., United States v. Maxwell*, 157 F.3d 1099, 1100 (7th Cir. 1998)(citing section 553, court held that "bankruptcy laws generally permit a creditor to offset, on a dollar-for-dollar basis, a debt it owes to the bankrupt party against a pre-commencement debt that the bankrupt owed to the creditor"); *In re Yale Express Sys., Inc.*, 362 F.2d 111, 115 (2d Cir. 1966).

The legislative history to section 363(k) not only makes clear that the value of a credit bid is based upon the amount of the claim of the secured creditor, but also provides that a credit bid should have a value equal to the full amount of the indebtedness, without regard to the value of the collateral:

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 13 of 17

> Section 363(k) of the House amendment is derived from the third sentence of section 363(e) of the Senate amendment. The provision indicates that a secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event that the creditor is undersecured, with respect to property that is subject to a lien that secures the allowed claim of the sale of the property.

124 Cong. Rec. H11,047, H22,093 (Sept. 28, 1978); *see 680 Fifth Avenue Assocs. v. The Mutual Benefit Life Ins. Co. in Rehabilitation (In re 680 Fifth Avenue Assocs.)*, 156 B.R. 726, 732 (Bankr. S.D.N.Y. 1993)(lender may, under 11 U.S.C. §363(k), "bid in the undersecured portion of its claim when the collateral is sold"); *In re Realty Investments, Ltd. V*, 72 B.R. 143, 146 (Bankr. C.D. Cal. 1987)(for purposes of credit bidding, secured creditor is entitled to bid full amount of claim "without reference to the value of the property").

From the above, it is evident that the Debtors cannot, in comparing the value of bids to be proposed, simply choose to ignore the credit bid or pretend that it has no value. Such a result, if permitted, would allow debtors to circumvent the "unconditional" protection otherwise afforded by section 363(k), merely by choosing not to ascribe any value to the credit bid in favor of a cash or other bid. That cannot be the law. Instead, the Debtors must, in order to preserve the protections granted to secured creditors under section 363(k) and elsewhere in the Bankruptcy Code, calculate the value of the credit bid as equal to cash.

US1 32260912.1

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed   12/13/11   Page 14 of 17

In addition, to reflect St. Francis' credit bidding rights, the bidding procedures should be modified as follows:

- St. Francis should be deemed a qualified bidder.

- St. Francis should not be required to submit an Over Bidder's Deposit (as defined in the Bidding Procedures Motion).

- St. Francis should not be required to pay any break-up fee to Prime and any break-up fee that may be allowed shall be junior to St. Francis' Adequate Protection Liens and Adequate Protection Claims under the Final DIP Order (as discussed below).

- Competing bids need not be substantially similar to the terms and conditions set forth in the Prime offer.

## C. St. Francis Should Not Be Responsible For Any Break-Up Fee.

The Bidding Procedures Motion also requests authority to grant Prime a break-up fee equal to $625,000 as a superpriority administrative expense under section 364(c)(1) of the Bankruptcy Code in the event that the Debtors' select another purchaser or do not go forward with the sale. St. Francis is not objecting to the allowance of a break-up fee to Prime that is junior in all respects to St. Francis' claims and is not required to be paid from St. Francis' credit bid. The Debtors, however, have offered no support for forcing an existing secured party to pay a break-up fee to a stalking horse as part of the secured creditor's credit bid.

Courts considering the allowance of break-up fees have generally considered whether the claim would otherwise qualify as an administrative expense, i.e. whether the expense was actually necessary to preserve the value of the estate.

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed   12/13/11   Page 15 of 17

*See, In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). In this case, Prime's offer does not generate additional value to the estate unless there is a bid beyond St. Francis' credit bid. Prime was also not necessary to bring St. Francis as a potential bidder since St. Francis was a pre-existing secured creditor. In addition, granting Prime a superpriority administrative expense claim for its break-up fee that is *parri passu* with St. Francis' Adequate Protection Claims under the Final DIP Order will dilute the limited adequate protection that has been offered to St. Francis under the Final DIP Order. The Debtors have not made any showing that St. Francis will be adequately protected under section 363(e) or 361 of the Bankruptcy Code.

Accordingly, the Court should not approve the allowance of a break-up free to Prime that is equal or senior to St. Francis or is otherwise payable by St. Francis in connection with any credit bid.

US1 32260912.1

U.S. Bankruptcy Court - Hawaii   #11-01746   Dkt # 459   Filed  12/13/11   Page 16 of 17

**CONCLUSION**

WHEREFORE, based upon the foregoing, the Court should deny the

Bidding Procedures Motion or in the alternative, require the modifications

identified herein.

DATED:  Los Angeles, CA          McCORRISTON MILLER MUKAI
            December 13, 2011          MacKINNON LLP
                                              Jonathan H. Steiner

                                              DEWEY & LEBOEUF LLP

                                              */s/ Joshua M. Mester*
                                              Bruce Bennett
                                              Joshua M. Mester

                                              *Attorneys for St. Francis Healthcare System of*
                                              *Hawaii, St. Francis Medical Center, and St.*
                                              *Francis Medical Center - West*

US1 32260912.1